**Joseph J. DAVIS, Plaintiff,**

v.

**BOY SCOUTS OF AMERICA, a corporation, Defendant.**

**Civ. No. 77–2226.**

United States District Court,
D. New Jersey.

Aug. 16, 1978.

Young, Rose & Millspaugh, P. C. by Frederick W. Rose, Peter M. Burke, Newark, N. J., for plaintiff.

Keywell & Rosenfeld, by Thomas W. H. Barlow, Troy, Mich., Shanley & Fisher, by Louis John Dughi, Jr., Newark, N. J., for defendant.

## MEMORANDUM

CLARKSON S. FISHER, District Judge.

This case presents an issue which federal courts, and to some degree state courts, have been seeing with ever increasing frequency; that is, the right of an employer to mandatorily or involuntarily retire an employee upon his or her reaching a certain age. The recent enactments of legislation in this area, both federal and state, has resulted in a substantial change from the decisional law interpreting the legislation.[1] Thus this case is, in large measure, one of first impression.

This matter comes before the Court on various motions of the defendant to dismiss;[2] for a protective order; and to extend time for discovery.

A brief statement of the facts as alleged by the plaintiff is needed to put this matter in perspective. Davis was involved in scouting as an Eagle Scout and volunteer leader prior to commencing his employment with the Boy Scouts of America (hereinafter BSA). From 1942 to 1965 he was employed as a deputy scout executive and scout executive. From 1965 until 1974 he was employed as a director of a scout ranch. During 1974 he made a decision to retire, however, it is alleged that his superiors induced him to continue to work. The plaintiff alleges that he was persuaded not to retire at that time based upon promises of the creation of a new position specifically for him and that he would be allowed to remain in that position until his scheduled retirement in March of 1977. Plaintiff was, in fact, involuntarily retired on July 1, 1976, some nine months prior to that date.

The first hurdle that the defendant sets up is the filing requirement. This motion is in two parts, as is the other motion to dismiss. By the first part of this motion the defendant alleges that the Court lacks subject matter jurisdiction over the first count because of a failure to comply with the statutory requirements regarding filing. By the second part the defendant states that since jurisdiction in this matter is predicated upon the Age Discrimination in Employment Act (hereinafter ADEA) of 1967, a dismissal of count one will, of necessity, require the dismissal of counts two and three.

The defendant states that for the purpose of this motion certain facts have been stipulated. No stipulation of facts was ever filed nor is such a stipulation mentioned in the plaintiff's brief. The plaintiff's statement of facts, however, is identical to the defendant's stipulated facts. At the hearing the attorney for the defendant mentioned the stipulation and the plaintiff's attorney did not protest, thus it would appear that there is a stipulation though its exact contents were not made known. (Any apparent discrepancy will be indicated by italics.) The facts are as follows:

On May 27, 1976, Davis was verbally informed by John M. Clarehout, BSA's National Director of Operations, of the defendant's decision to place him on early retirement. By letter dated June 1, 1976 the May 27 conversation was "recapped" and Davis was given written notification that he " . . . would retire pre-normally

---

1. With the amendment to the ADEA, Age Discrimination in Employment Act Amendments of 1978, Act of April 6, 1978, Pub.L. No. 95–256, § 2, 92 Stat. 189, this specific violation and the law suits resulting therefrom should be substantially reduced. That Act provides in part:

    Sec. 2.(a) Section 4(f)(2) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 623(f)(2)) is amended by inserting after "individual" a comma and the following: "and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 12(a) of this Act because of the age of such individual."

2. The defendant moves to dismiss: (1) for lack of jurisdiction based upon an alleged failure to comply with the time constraints found in 29 U.S.C. 626(d); and (2) for failure to state a claim upon which relief can be granted; i. e. alleging that the retirement was under a bona fide plan.

from the Boy Scouts of America on June 30, 1976."

Davis continued to perform services for BSA *at the defendant's national headquarters* until June 9, 1976. On or about June 10, 1976, Davis travelled to Cimarron, New Mexico *in his capacity as BSA's Manager of Philmont and High Adventure* to give a speech at BSA's Philmont Scout Ranch. (Defendant does not state in what capacity Davis travelled, only that "[w]hile he was not *additionally* compensated for the engagement, his travel expenses were paid by the Boy Scouts of America.") (Defendant's brief, p. 1) (emphasis added). The speech was given on or about June 12, 1976 to approximately five hundred attendees of Philmont's Staff Opening Banquet, the event that marks the commencing of another season at Philmont. *Following his speech at the banquet, Davis spent approximately one week at Philmont.* (At the hearing it was indicated that the reason he stayed was to use up his vacation time prior to his retirement, as he was directed to do by his superiors). *During this period of time and throughout the month of June, 1976, Davis continued to draw his regular salary from BSA.*

*On June 28, 1976, Davis returned to BSA's national headquarters and remained there throughout the week up to and including July 2, 1976. This final week at headquarters was spent bidding friends farewell and filling out the retirement and other forms necessary to disengage him from BSA in an orderly fashion.*

*On November 30, 1976 the United States Secretary of Labor was advised by counsel for Davis that Davis intended to sue BSA for age discrimination pursuant to the ADEA of 1967.* Thereafter, notice of this intent to sue was reduced to writing by an intent to sue letter dated December 15, 1976. This letter was received by the Secretary of Labor's representative on December 16, 1976. On December 17, 1976 a verified complaint was received by the New Jersey Department of Law and Public Safety, Division on Civil Rights, in which Mr. Davis alleged age discrimination on the part of BSA.

While the filing requirements under the ADEA is not an area marked by severe variations in decisional law, it is, nonetheless, a notably murky region. In the Third Circuit the case of *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3d Cir. 1978) is the leading case in this area. The case here is not markedly different from *Bonham, supra,* but it is a variation of sorts. This case furthers the understanding of when an "alleged unlawful practice" is deemed to have occurred. By it the law becomes more refined and hopefully defined.

The Age Discrimination in Employment Act of 1967 was designed to promote the employment of persons between the ages of 40 and 64[3] by prohibiting discriminatory employment decisions based on age. See 29 U.S.C. § 631. The substantive provisions of the Act are enforceable both by governmental actions and by private suits brought by aggrieved persons. Prior to the commencement of any action, the Secretary of Labor must be given an opportunity to eliminate the allegedly discriminatory practice through informal methods. 29 U.S.C. § 626(d). In order to provide the Secretary this opportunity to attempt conciliation, an aggrieved person must notify the Secretary that he intends to sue 60 days before commencing an action.

The Act imposes two additional procedural requirements on private litigants. Section 626(d)(1) provides that the 60 day notice of intent to sue must be filed with the Secretary of Labor "within one hundred and eighty days after the alleged unlawful practice occurred . . . ." Section 633 provides, in pertinent part:

"(b) In the case of an alleged unlawful practice occurring in a state which has a law prohibiting discrimination in employment because of age and establishing or

---

**3.** The age has since been raised to 70 by the Amendments to the 76 Act. Age Discrimination in Employment Act Amendments of 1978,

Act of April 6, 1978, Pub.L.No. 95–256, § 12, 92 Stat. 189.

authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 . . . before the expiration of sixty days after proceedings have been commenced under the State law, unless proceedings have been earlier terminated . . . ."

*Bonham v. Dresser, supra* at 191. (Footnote added).

In this case, as in *Bonham*, both procedural requirements are in issue. The defendant correctly points out that, though other circuits have construed these time limitations as jurisdictional prerequisites, *see Hiscott v. General Electric Co.*, 521 F.2d 632 (6th Cir. 1975); *Powell v. Southwestern Bell Telephone Co.*, 494 F.2d 485 (5th Cir. 1974), the Third Circuit has agreed with the Tenth Circuit, *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976), *aff'd. per curiam*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977), in holding that they are merely in the nature of a statute of limitations, *see Bonham v. Dresser, supra*, and thus subject to the equitable principles of tolling and estoppel. Before it becomes necessary to determine the applicability of these equitable principles, I must determine which of the procedural requirements applies.

The plaintiff's first contention is that the extended 300 day limitation must apply as New Jersey has a law against age discrimination and an authority to grant the relief as specified by § 14(b) of the ADEA, 29 U.S.C. § 633(b).

In order for § 14(b) to apply, the State must have a law prohibiting discrimination in employment because of age and establishing a state authority capable of granting or seeking relief from the discrimination.

It can not be denied that the State of New Jersey has civil rights legislation which prohibits discrimination against persons with certain generic characteristics, age being one, *see* N.J.S.A. 10:5–1 *et seq.*, specifically N.J.S.A. 10:5–12(a); *Marshall v. West Essex General Hospital*, 575 F.2d 1079 (3d Cir. 1978); *Goger v. H. K. Porter Co.*, 492 F.2d 13, 15 (3d Cir. 1974), nor that it has

an apparatus, i. e. a state agency, whereby one so aggrieved may seek redress.

Until recently the position of the Third Circuit had been that where a state had both a law prohibiting discrimination because of age and an agency empowered to act on such an allegation, resort to the state remedy was a jurisdictional prerequisite to suit in the federal courts. *Rogers v. Exxon Research and Engineering Co.*, 550 F.2d 834 (3d Cir. 1977), *cert. denied* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978); *Goger v. H. K. Porter Co., supra; McCracken v. Shenango, Inc.*, 440 F.Supp. 1163 (W.D.Pa. 1977). *But see Evans v. Oscar Mayer & Co.*, 580 F.2d 298 (1978) (on rehearing); *Smith v. Jos. Schlitz Brewing Co.*, 419 F.Supp. 770, 773–4 (D.N.J.1976); *McGinley v. Burroughs*, 407 F.Supp. 903, 905 (E.D.Pa. 1975). It was not required that the state remedies be exhausted before the institution of suit. *See* 29 U.S.C. § 633(a) which provides that a federal action may be filed 60 days after the commencement of the state agency action, and the federal action shall supersede the state action.

Since that time, however, the Third Circuit has had a chance to review those cases in light of the recent United States Supreme Court decision in *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), as well as the recent statutory amendments to the A.D.E.A. After a thorough analysis, Judge Garth, writing for the majority in *Holliday v. Ketchum*, 584 F.2d 1221 (3d Cir. 1978) (en banc), *see also Smith v. Jos. Schlitz Brewing Co.*, 584 F.2d 1231 (3d Cir. 1978), adopted virtually the same position he took in his concurring opinion in *Goger, supra*, that is, that filing a claim with the appropriate state agency is not a jurisdictional prerequisite to filing a suit in the federal courts under the ADEA. Thus by specifically overruling its earlier opinion in *Goger, supra*, the court now allows the plaintiff an initial choice of forum.

The contention raised by the defendant is that even though both cases and statutes would appear to indicate that the requirements of § 7(d), 29 U.S.C. § 626(d) have been filled, and thus § 14(b), 29 U.S.C.

§ 633(b) would apply, the agency involved has indicated that they have no jurisdiction over this matter because the defendant is not an employer as defined by state law. N.J.S.A. 10:5–5(e).[4] Thus since there is an inability to "grant or seek relief" as required by § 14(b) that statute no longer governs and the Court must revert to the time limitation specified in § 7(d)(1).

To this the plaintiff counters by stating that the defendant misconstrues the statute and attempts to have the language supplanted to the effect that the 300 day limitation applies only if the state has a law prohibiting discrimination by the BSA.

■ The fact of the matter is that New Jersey law does not provide a remedy for age discrimination by anyone who is excluded from the definition of employer. Thus for the purpose of a suit by a former employee against a non-profit corporation New Jersey does not have an agency empowered to grant or seek relief.[5]

■ Having surmounted the hurdle of the ability and/or necessity of complying with meaningful state deferral, I turn now to the question of compliance with the intent to sue notice provisions. At this point it becomes necessary to digress for a moment. Before any determination can be made as to whether notice was given within the 180 day limit,[6] it is necessary to establish when that period begins to run.

It is the defendant's position that the plaintiff did not file within the 180 day period as is required by the statute. The complaint was received by the Secretary of Labor's representative on December 16, 1976, thus, working backward, the alleged wrongful act must have occurred on or after June 20, 1976 in order for there to have been a timely filing. Under the stipulated facts the defendant contends that there was unequivocal notice given on May 27, 1976; that a confirming letter was sent on June 1, 1976; that the last regular service was rendered on June 9, 1976; and that the last official contact with the organization was on June 12, 1976. Thus BSA contends that under *Bonham v. Dresser, supra,* since unequivocal notice of retirement was given and Davis last rendered services on June 9th or June 12th at the latest, he is at least 8 days short of the filing period.

In response the plaintiff contends that the time when the 180 days begins to run does not start until June 30, 1976. In support of this position he cites: (1) the letter of Mr. John Clarehout, National Director of Operations, which states that Davis would retire on June 30, 1976; (2) a letter of Mr. Ernest O. Cuccaro, Director of Compensa-

---

4. N.J.S.A. 10:5–5(e) provides

(e) "Employer" does not include a club exclusively social or a fraternal, charitable, educational or religious association or corporation, if such club, association or corporation is not organized and operated for private profit.

This statute has since been amended as follows:

(e) "Employer" includes all persons as defined in subsection (a) of this section unless otherwise specifically exempt under another section of this act, and includes the State, any political or civil subdivision thereof, and all public officers, agencies, boards or bodies.

1977 N.J.Sess.Law.Serv. Ch. 122, § 1, amending Section 5 of P.L.1945, c. 169.

(a) provides

"Person" includes one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers and fiduciaries.

5. *See also Eklund v. Lubrizol Corp.,* 529 F.2d 247 (6th Cir. 1975), (no penalty provisions provided for); *Curry v. Continental Airlines,* 513 F.2d 691 (9th Cir. 1975) (no legislative mandate directing Calif. Dept. of Human Resources to act in field of age discrimination).

Under the amendments to the New Jersey Age Discrimination law BSA would now be an employer and the State Division of Civil Rights would not be able to dismiss for lack of jurisdiction.

At the hearing the defendant also raised the claim that the plaintiff did not comply with the 180 day filing limitation for New Jersey and thus he would be precluded from applying § 14(b) of the ADEA on that basis. Because of the result reached as to the general applicability of § 14(b), in this case, it is unnecessary to discuss this newly raised contention of the defendant.

6. As the plaintiff can not come within the state proceeding requirement, 29 U.S.C. § 633(b), the applicable statute of limitations is 180 days not 300 as provided in 29 U.S.C. § 626(d)(2).

tion and Benefits Service, to the effect that "retirement certificate of Joe Davis who retires on July 1, 1976 . . . "; (3) the BSA's termination or in transition notice which lists as the last day of work as July 1, 1976; and (4) the separation information for the Department of Labor.[7]

The question thus becomes whether the time when the plaintiff should have filed his notice of intent to sue should include the interim period between his last day of work, June 9 or 12, and the last day he was paid his regular salary, June 30, i. e. his vacation period.

Some courts have held that the time when the plaintiff continues to receive benefits of employment after the date of termination of work must not be considered in computing the date from which filing requirements of the ADEA are to be measured. *Davis v. RJR Foods, Inc.,* 420 F.Supp. 930, 931 (S.D.N.Y.1976); *aff'd. without opinion,* 556 F.2d 555 (2d Cir. 1977). The Third Circuit has not spoken so definitively. Rather, they have discussed the humanitarian nature of the ADEA and the shortness of the 180 day period. The Court stated in *Bonham, supra,* at 192:

> The 180 day period does not begin to run until the employee knows, or as a reasonable person should know, that the employer has made a final decision to terminate him, and the employee ceases to render further services to the employer. Until that time he may have reason to believe that his status as an employee has not finally been determined, and should be given an opportunity to resolve any difficulty while he continues to work

for the employer. In any event, a terminated employee who is still working, should not be required to consult a lawyer or file charges of discrimination against his employer as long as he is still working, even though he has been told of the employer's present intention to terminate him in the future.

The one exception noted and applied in *Dresser, supra,* at 191 is

> . . . *where unequivocal notice of termination and the employee's last day of work coincide, then the alleged unlawful act will be deemed to have occurred on that date, notwithstanding the employee's continued receipt of certain employee benefits* . . . . (Emphasis added).

Here the date given for termination by the employer was either June 30th or July 1st. It certainly does not coincide with the date given as the last day of work, June 9 or June 12. As indicated earlier, during that interim period the plaintiff was taking his accrued vacation time as directed by his superiors. Had he taken this time earlier one can only assume that he would have continued in active service until the date he was supposed to retire, June 30th. Since this is consistent with and coincides with the date stated by the employer as his termination of employment,[8] I conclude that June 30th is the day the 180 day filing period begins to run.[9]

Therefore the defendant's motion to dismiss the complaint on the basis of lack of jurisdiction and pendent jurisdiction is denied.

7. The plaintiff does not contend, as did the plaintiff in *Bonham v. Dresser, supra,* that the time does not run until after June 30th, i. e. (1) after BSA stopped subsidizing his monthly salary retirement benefits, or (2) when his severance pay (token appreciation pay) expired, or (3) when he was forced to vacate his residence at Schiff Scout Reservation. Similar arguments were made and rejected by the Third Circuit in *Bonham v. Dresser, supra.*

8. The plaintiff raises several arguments why the filing period should be tolled. One such reason was that the employer had stated to the employee that his termination was on June 30,

1976 and all the employer's records so indicated. Therefore, the employer is estopped from saying that the notice to sue was untimely filed. This provides further support for my decision that, under the circumstances herein, the plaintiff's filing was timely. *See Dresser, supra,* n. 6.

9. At the hearing the plaintiff's attorney also raised the question of whether the employer had complied with the posting requirement, 29 U.S.C. § 627. As the filing question has already been resolved, it is unnecessary to discuss this issue.

672

The next major barrier set up by the defendant is its motion to dismiss count one for a failure to state a claim upon which relief can be granted. As indicated earlier, this motion is also in two parts. In part two the defendant moves to dismiss counts two and three based upon a lack of pendent jurisdiction. By the first part of the motion the defendant contends that involuntary retirement under a bona fide pension plan is valid and not in violation of the ADEA.

The plaintiff finds fault with this, basing his argument on the recent enactment of the Age Discrimination in Employment Act of 1978, Act of April 6, 1978, Pub.L.No. 95–256, § 2, 92 Stat. 189 (hereinafter ADEA of 1978) and the contention that the plan, as carried out, is merely a subterfuge and therefore not a bona fide plan under the Act.[10]

As stated earlier, Congress by the enactment of the ADEA of 1978 has amended the ADEA of 1967. The legislative history indicates the reason for the amendment as follows:

Section 4(f)(2) of the act permits an exception to the ADEA's general age discrimination prohibition by making it lawful "to observe the terms of  *  *  * any bona fide employee benefit plan *  * which is not a subterfuge to evade the purposes of the Act." The purpose of this exception was to facilitate the hiring of older employees by permitting their employment without necessarily providing equal benefits under employee benefit plans.

*     *     *     *     *     *

During the Senate debate, Senator Yarborough, the floor manager of the bill, stated that this section " *  *  * will not deny any individual employment or prospective employment but will limit

his rights to obtain full consideration in the pension, retirement or insurance plan." Senator Javits at the time stated:

"An employer will not be compelled under this section to afford to older workers exactly the same pension, retirement, or insurance benefits as he affords to younger workers."

Despite this clear explanation of legislative intent, there is at present a conflict in the courts over the interpretation of this section. The third and fifth circuits have ruled that a pension plan which requires mandatory retirement prior to age 65 does not violate the act, because such a provision is sanctioned by section 4(f)(2). *Zinger v. Blanchette*, 549 F.2d 901 (3d Cir. 1977); *Brennan v. Taft Broadcasting*, 500 F.2d 212 (5th Cir. 1974).

The *Taft* court found the language of the section unambiguous and refused to consider the legislative history. It concluded, erroneously in the committee's view, that a plan could not be a subterfuge within the meaning of section 4(f)(2) if it was operative before the effective date of the act. In *Zinger*, the third circuit distinguished between discharge and mandatory retirement on a pension, in ruling against a plaintiff who had been mandatorily retired. The court held that there is no statutory prohibition against retirement on a pension, and so long as the retirement benefits are substantial, the forced retirement would not be a "subterfuge to evade the purposes" of the act. We also disagree with the third circuit's interpretation of this section. In the committee's view, forced retirement extinguishes an individual's right to employment and is thus not excused by section 4(f)(2) unless the retirement is based on some reason other than age, such as disability or poor performance.

Lastly he contends, and this comports with what the legislators state in the reports on this Bill, that by allowing early retirement at the option of the employer, or a mandatory early retirement, the employer will be able to subvert the purpose of the ADEA by retiring an employee with virtually no benefits.

---

10. The plaintiff alleges that by virtue of amendment of the BSA pension plan, BSA is given the option to mandatorily retire employees, whereas prior to the amendment the employee was the one with the option to retire early. Furthermore the plaintiff indicates that his retirement was selective in that not all employees who reach his age are automatically retired.

In *McMann v. United Airlines,* 542 F.2d 217 (4th Cir. 1976) *cert. granted* 429 U.S. 1090, [97 S.Ct. 1098, 51 L.Ed.2d 535] (1977), the Fourth Circuit Court of Appeals held that section 4(f)(2) did not permit mandatory retirement pursuant to the terms of a collective bargaining agreement or pension plan. To rule otherwise, the Court said, would undermine the intent of Congress, because the purpose of 4(f)(2) was to encourage the employment of older workers by permitting employees to make distinctions based on age with respect to participation in employee benefit plans.

*Because of the large number of pension plans which require mandatory retirement and the uncertainty of the outcome of court deliberations on the meaning of section 4(f)(2), congressional action to clarify our original intent.* (sic) *The amendment to section 4(f)(2) serves to express congressional approval of the result reached by the fourth circuit in McMann.*

S.Rep.No. 95–493, 95th Congress, 1st Session 1977, U.S.Code Cong. & Admin.News 1978, p. 513 (footnotes omitted) (emphasis added). Language to the same effect may be found in the House and Conference Reports on this bill. H.R.Rep.No. 95–527, 95th Congress, 1st Session 1977; H.Conf.Rep.No. 95–950, 95th Congress, 2nd Session 1978, U.S.Code Cong. & Admin.News 1978, p. 528.

■ By this amendment, Congress meant to overturn decisions interpreting the Act, so as to allow involuntary or mandatory retirement on the basis of a "bona fide" pension plan. It was felt that this was necessary to protect the inchoate rights of employees to full benefits under their pension plans.

■ Initially, it appeared that the plaintiff was seeking a retroactive application of the amendment. Upon reflection, however, it appears that what is being suggested is that I apply the law which is currently in effect when I make my decision. While the final authority as to the meaning of any federal law is the United States Supreme Court, a decision of that Court is subject to change both by the Court itself or by Congress. Here the Congress has seen fit to change the interpretation of the ADEA given by the Supreme Court, *see United Airlines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), to comport with what it says was its original intent. This change, in the state of the law, is analogous to a reversal by the Supreme Court of an earlier decision in that the inferior federal courts become bound to apply the law as revised, not as it was sometime earlier. Thus, the plaintiff's suggestion is in accord with the law. *See Bradley v. Richmond School Bd.,* 416 U.S. 696, 710–16, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *United States v. Alabama,* 362 U.S. 602, 604, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960); *Hines v. Daridowitz,* 312 U.S. 52, 60, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Reynolds v. United States,* 292 U.S. 443, 449, 54 S.Ct. 800, 78 L.Ed. 1353 (1934); *American Foundries v. Tri-City Council,* 257 U.S. 184, 201, 42 S.Ct. 72, 66 L.Ed. 189 (1921); *Bethlehem Mines Corp. v. Warmus,* 578 F.2d 59 at 63 (3d Cir. 1978). Applying the amendment to this case, it is apparent that the conduct alleged is specifically proscribed, thus, the defendant's second motion to dismiss must be denied.

The House and Senate Reports also indicate that the decisional law, to the effect that mandatory retirement under a plan established prior to the enactment of the ADEA, is automatically excluded from being termed a subterfuge is in direct contravention of the purpose of the Act. In any event, any decision as to whether the amendments to the plan would, in fact, constitute a subterfuge will have to await a trial on the merits.

■ I turn now to the two remaining motions. At the hearing it was indicated that the motion to extend time for discovery was consented to by the plaintiff and thus need not be addressed herein.

The final motion brought by the defendant seeks a protective order. The defendant's contention is that Mr. John M. Clarehout, of whom the plaintiff seeks to take depositions, is no longer an employee of

673

BSA, thus, it should not be required to bear the burden of producing him.

The defendant argues that although Mr. Clarehout was employed by the corporation he is no longer so employed. Rather, he now works for the Los Angeles Area Council of the Boy Scouts of America. At the hearing on this issue, the defendant's counsel stated that the Los Angeles Area Council is more in the nature of a franchise than an actual part of the corporation. In support of this the defendant cites the affidavit of Mr. Curtis Wessner, Director of Employee Relations and Associate Director of the National Staff Personnel of the National Council of the BSA. He states that the Los Angeles Area Council is chartered, but not owned or operated by the National Council of the BSA. Further, that they do not own any of the Los Angeles Area Council's assets or assert control over the organization.

In reply, the plaintiff states that the Charter and by-laws indicate that any Area Council, including the Los Angeles Area Council, is the BSA. BSA is merely the sum total of its parts. They also rely upon the annual report submitted to Congress, which includes the report of the treasurer containing references to the Los Angeles Area Council.

A review of the material submitted by the plaintiff indicates that the local councils are more in the nature of local offices of a large corporation rather than totally separate and independent entities. The National Council has a retirement plan which covers both its own employees and the employees of local councils. It disburses funds to the local councils and in some cases receives funds which are donated to the local councils. Thus, I must agree with the plaintiff's characterization of the organization. Furthermore, as Mr. Clarehout is an executive in the organization, a request to take his deposition is proper and the defendant must bear the cost. Therefore, the defendant's motion for a protective order is denied.

Plaintiff will submit an order consented to as to form within ten days.