Hans JENSEN, Plaintiff-Appellant,

v.

GULF OIL REFINING AND MARKETING COMPANY and Gulf Oil Corporation, Defendants-Appellees.

No. 79–1572.

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1980.

James E. Robinson, Houston, Tex., for plaintiff-appellant.

William G. Duck, The Gulf Companies, Law Dept., Houston, Tex., for defendants-appellees.

Marcia B. Ruskin, App. Div., EEOC, Washington, D. C., amicus curiae, for Equal Employment Opportunity.

Before VANCE, POLITZ and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

## I. FACTS

Plaintiff-Appellant Hans Jensen brought suit against his former employer, Gulf Oil Corporation and Gulf Oil Refining and Marketing Company, a division of Gulf Oil Corporation (Gulf), alleging that Gulf violated the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–34 (1976) by forcing him to retire because of his age. From a summary judgment entered in Gulf's favor, Jensen appeals.[1]

---

1. *See also Renaudin v. Gulf Oil Corp.*, 623 F.2d 414 (5th Cir. 1980), decided today by this court. *Renaudin* presents, under slightly different facts, the same legal issues discussed and decided in this case.

Appellant, a Gulf employee for twenty-nine years, was involuntarily retired on January 31, 1977, at the age of fifty-one, pursuant to the terms of an employee benefit plan that has been in effect at Gulf continuously since 1944. Under that plan, the normal retirement age is sixty-five, but after an employee has accumulated seventy-five points, computed on the basis of age plus years of service with Gulf, he can be retired at any time either upon his own request or upon application of any of the Gulf companies.

The purpose of the ADEA is stated as follows:

> to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

29 U.S.C. § 621(b) (1976). Under the ADEA it is unlawful for an employer:

> to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . .

*Id.* at § 623(a)(1).

At the time of Jensen's retirement, § 623(f)(2) of the ADEA contained the following language permitting some involuntary retirements prior to age sixty-five:

> (f) It shall not be unlawful for an employer, employment agency, or labor organization—
>
> \*　\*　\*　\*　\*　\*
>
> (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no

such employee benefit plan shall excuse the failure to hire any individual . . . .

*Id.* at § 623(f)(2) (amended 1978).[2] In 1978, that subsection was amended to provide as follows:

> (f) It shall not be unlawful for an employer, employment agency, or labor organization—
>
> (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual . . . .

*Id.* at § 623(f)(2) (Supp. II 1978). Congress provided that the amendment "shall take effect on the date of enactment of this Act [April 6, 1978]." Pub.L.No.95–256 § 2(b), 92 Stat. 189.

## II. ISSUES

Jensen does not contend that there are any genuine issues of material fact, so we must determine only whether Gulf is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The first issue presented in this appeal is the retroactive application of the 1978 amendment to § 623(f)(2). If that amendment governs in this case, Gulf's action was concededly unlawful. If the amendment does not apply retroactively, the question remains whether Gulf's action was unlawful under the unamended version of § 623(f)(2) in effect at the time of Jensen's retirement. Answering both questions in the negative, we affirm the judgment of the district court.

---

**2.** Subsection (3) of § 623(f) provides that it shall not be unlawful for an employee to be discharged or otherwise disciplined for good cause. 29 U.S.C. § 623(f)(3) (1976). Although Gulf raised § 623(f)(3) in addition to § 623(f)(2) as a defense, it is not an issue in this appeal.

## III. RETROACTIVITY OF AMENDMENT TO § 623(f)(2)

Since the amendment of the ADEA in 1978, several courts have had occasion to consider whether the amendment to § 623(f)(2) should be applied to involuntary retirements occurring before April 6, 1978, the date of enactment of the Act amending the ADEA. *See, e. g., Sikora v. American Can Co.*, 22 FEP 638 (3d Cir. 1980); *Marshall v. Delaware River & Bay Authority*, 471 F.Supp. 886 (D.Del.1979); *Marshall v. Baltimore & Ohio Railroad Co.*, 461 F.Supp. 362 (D.Md.1978); *Marshall v. Atlantic Container Line*, 18 FEP 1167 (S.D.N.Y.1978); *Davis v. Boy Scouts of America*, 457 F.Supp. 665 (D.N.J.1978). Of those cases, we are aware of only one holding that the amendment to § 623(f)(2) should be applied to an involuntary retirement occurring before the ADEA was amended, *Davis*, 457 F.Supp. 665.[3] *Cf. Wagner v. Sperry Univac, Division of Sperry Rand Corp.*, 458 F.Supp. 505, 511 n.3 (E.D.Pa.1978) (1978 amendments to 29 U.S.C. § 626(d), lowering some procedural hurdles with which plaintiffs must comply under the ADEA, said to be applicable only to actions brought after April 6, 1978).

■ Applying the principle set forth in *United States v. Schooner Peggy*, 5 U.S. 103 (1 Cranch), 2 L.Ed. 49 (1801),[4] and elaborated upon in *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary," *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016, we conclude that the amended version of § 623(f)(2) does not apply to retirements occurring before the date the amendment was enacted.

### A. Statute and Legislative History

Turning first to the statute, we do not find the statement that the amendment prohibiting involuntary retirement before age sixty-five shall take effect upon enactment dispositive.[5]

Turning next to the legislative history, Appellant stresses that one of the purposes of the amendment was to clarify Congress' original intent. *See, e. g.*, H.R.Conf. Rep.No. 950, 95th Cong. 2d Sess. 7–8, *reprinted in* [1978] U.S.Code Cong. & Admin. News, pp. 504, 528–29. In order to reach the result that involuntary retirement before age sixty-five would not be excused by

---

**3.** In *Davis* the court reasoned as follows:

Initially, it appeared that the plaintiff was seeking a retroactive application of the amendment. Upon reflection, however, it appears that what is being suggested is that I apply the law which is currently in effect when I make my decision. While the final authority as to the meaning of any federal law is the United States Supreme Court, a decision of that Court is subject to change both by the Court itself or by Congress. Here the Congress has seen fit to change the interpretation of the ADEA given by the Supreme Court, *see United Airlines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), to comport with what it says was its original intent. This change, in the state of the law, is analogous to a reversal by the Supreme Court of an earlier decision in that the inferior federal courts become bound to apply the law as revised, not as it was sometime earlier. Thus, the plaintiff's suggestion is in accord with the law. 457 F.Supp. at 673 (citations omitted).

**4.** In *Schooner Peggy*, Mr. Chief Justice Marshall wrote:

It is, in the general, true, that the province of an appellate court is only to inquire whether a judgment, when rendered, was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional . . . I know of no court which can contest its obligation. It is true, that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns . . . the court must decide according to existing laws . . . .

5 U.S. at 110.

**5.** As noted by the court in *Sikora*, the wording could mean only that no such retirements could take place after April 6, 1978 or that defenses based on existing retirement plans are eliminated. 22 FEP at 640.

§ 623(f)(2) as worded when enacted in 1967, unless the reasons for the retirement were other than age, clarification was needed since courts construing that section had held to the contrary. *See Zinger v. Blanchette*, 549 F.2d 901 (3d Cir. 1977), *cert. denied*, 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978); *Brennan v. Taft Broadcasting Co.*, 500 F.2d 212 (5th Cir. 1974). The Fourth Circuit, however, had held that a pre-age-sixty-five involuntary retirement under a retirement plan, meeting the *Brennan* tests (requiring that it exist and pay substantial benefits in order to be bona fide and that it predate the enactment of the ADEA in order not to be a subterfuge), is nevertheless proscribed by the ADEA unless the employer can demonstrate that the early retirement provision "ha[s] some economic or business purpose other than arbitrary age discrimination." [6] *McMann v. United Air Lines, Inc.*, 542 F.2d 217, 221 (4th Cir. 1976), *rev'd*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). The Supreme Court reversed that decision during the pendency of the 1978 amendments to the ADEA and held that no such purpose was required to justify bona fide pre-existing plans in order to satisfy the subterfuge language of § 623(f)(2). *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). Justice Marshall, dissenting in that case, was of the opinion that the Committee reports concerning the 1978 amendments "make plain that, properly understood, the existing Act already prohibits involuntary retirement, and that the amendment is only a clarification necessitated by court decisions misconstruing congressional intent. H.R.Rep.No. 95–527, pp. 5–6 (1977); *id.*, at 27 (additional views of Rep. Weiss, quoting statement of Sen. Javits); S.Rep.No. 95–493, pp. 9–10 (1977)." *Id.* at 218, 98 S.Ct. at 458. (Marshall, J., dissenting). In response to this argument, however, the majority noted that "[l]egislative observations 10 years after passage of the Act are in no sense part of the legislative history." *Id.* at 200 n.7, 98 S.Ct. at 449 n. 7. *See also Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2072–2073, 60 L.Ed.2d 609 (1979) (quoting *McMann*); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1080 (5th Cir. 1980) ("What happened after a statute was enacted may be history and it may come from members of the Congress, but it is not part of the legislative history of the original enactment."); *Holliday v. Ketchum, MacLeod & Grove, Inc.*, 584 F.2d 1221, 1229 (3d Cir. 1978) ("Certainly the intent of the 1978 amenders of the ADEA cannot be said to represent or reflect the intent of the 1967 Congress: there is no necessary relation back.") (footnote omitted).

Furthermore, the clearest statement in the legislative history on the question of retroactivity of the amendment supports the view that it should not be applied retroactively. During Senate debates the following exchange occurred:

Mr. Randolph: I should like to ask the Senator from New Jersey (Mr. Williams) whether this bill retroactively covers a forced retirement at, say, age 60 or 62 prior to the effective date of this bill where the individual so retired is eligible for, and actually receives, a pension under a pension plan which has been qualified with the Internal Revenue Service?

Mr. Williams: The bill is not retroactive. The question of mandatory retirements prior to the effective date of this bill will be determined by the courts' interpretation of existing law.

123 Cong.Rec.S. 17304 (daily ed. Oct. 19, 1977). Other passages may be found in the legislative history which could be construed to support either position, but we do not deem them particularly helpful. We are of the opinion that neither the statute itself nor the legislative history warrants the conclusion that the 1978 amendment to § 623(f)(2) should be applied retroactively.

### B. Manifest Injustice

We turn next to determination of whether application of the amendment to § 623(f)(2) to involuntary retirement occurring prior to the date of enactment would

---

**6.** Refer to Part IV, *infra*.

result in manifest injustice. Under *Bradley*, we must consider "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." 416 U.S. at 717, 94 S.Ct. at 2019.

Noting that these factors overlap considerably, especially (b) and (c), we turn to examination of the first factor. In *Bradley*, the Supreme Court held § 718 of the Education Amendments of 1972, authorizing federal courts to award reasonable attorneys' fees to the prevailing party in a school desegregation case, applicable to attorneys' fees for services rendered prior to the statute's enactment, where the propriety of the fee award was pending resolution on appeal when the statute became law. 416 U.S. at 710, 94 S.Ct. at 2015. In *Bradley* the defendant was the School Board, a publicly funded governmental entity, with litigation resources far exceeding those of the plaintiffs, a class of children whose constitutional right to a nondiscriminatory education was furthered by the litigation. *Id.* at 718, 94 S.Ct. at 2019. The Court stated that "school desegregation litigation is of a kind different from 'mere private cases between individuals,'" and found that the statute at issue had to do with a "'great national concern.'" *Id.* at 718–19, 94 S.Ct. at 2019 (quoting *Schooner Peggy*). Thus, the nature and identity of the parties weighed in favor of the Court's holding the statute applicable in the case before it. In an action such as this one, however, between private employers and their employees, it is important that such private employers be able to order their affairs to comport with current, reasonable interpretations of existing law. It is this need for an acceptable standard of compliance that distinguishes the present case from cases such as *Bradley* and tends to militate against retroactive application of the statute, despite the conceded fact that age discrimination is an issue of great national concern.

We next consider the nature of the rights affected by the change in the law sought to be applied retroactively; that is, whether the rights are substantive and whether they are matured or unconditional. *Bradley*, 416

U.S. at 720–21, 94 S.Ct. at 2020–2021. We also consider the related question of the impact of the change in law upon those rights. The latter concern "stems from the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Id.* As was recently stated:

> [C]ourts have characterized defendants' rights in terms of whether they could expect that they had a right to engage in the now proscribed activity, *United States v. Hinds County School Board*, [560 F.2d 619, 622 (5th Cir. 1977)], or whether they would have "ordered their conduct differently if they had known the new statute was going to apply" to that activity. *King v. Greenblatt*, [560 F.2d 1024, 1025–26 n.2 (1st Cir. 1977)]; *see Bradley, supra,* 416 U.S. at 720–21, 94 S.Ct. 2006 [2020–2021].

*Marshall v. Baltimore & Ohio Railroad Co.*, 461 F.Supp. at 383.

Application of the 1978 amendment in this case would deprive Gulf of substantive contractual rights upon which it had a right to rely under a retirement plan which Jensen concedes is bona fide and not "in and of itself" a subterfuge to evade the purposes of the ADEA. Appellant's Brief at 7. *See Sikora*, 22 FEP at 642–43.

Jensen disputes Gulf's good faith reliance on the validity of its action since *McMann* was not decided by the Supreme Court until after Gulf involuntarily retired him and the "Circuit Court opinion in effect when Gulf acted held such mandatory plans invalid." Appellant's Brief at 14. Appellant apparently overlooks *Brennan v. Taft Broadcasting Co.*, which was approved by the Court in *McMann* and was the law in this Circuit at the time Gulf acted.

An interpretive bulletin, 29 C.F.R. § 860.-10 (1979), issued by the Department of Labor soon after enactment of the original statute reads in pertinent part as follows:

> (a) . . . Thus, the Act authorizes involuntary retirement irrespective of age, provided that such retirement is pursuant to the terms of a retirement or

pension plan meeting the requirements of section 4(f)(2). The fact that an employer may decide to permit certain employees to continue working beyond the age stipulated in the formal retirement program does not, in and of itself, render an otherwise bona fide plan invalid insofar, as the exception provided in section 4(f)(2) is concerned.

(b) This exception does not apply to the involuntary retirement before 65 of employees who are not participants in the employer's retirement or pension program. It should be noted that section 5 of the Act directs the Secretary of Labor to undertake an appropriate study of institutional and other arrangements giving rise to involuntary retirement, and report his findings and any appropriate legislative recommendations to the President and to Congress.

Secretaries of Labor since that time have revised the Department's position. In a 1975 report to Congress, Secretary Brennan stated:

> [R]etirements [before 65] are unlawful unless the mandatory retirement provision: (1) is contained in a bona fide pension or retirement plan, (2) is required by the terms of the plan and is not optional, and (3) is essential to the plan's economic survival or to some other legitimate purpose—i. e., is not in the plan for the sole urpose [sic] of moving out older workers, which purpose has now been made unlawful by the ADEA.

Dept. of Labor Ann. Rep. on Age Discrimination in Employment Act of 1967, 17 (1975).

In *McMann* the Court concluded that the plan at issue was mandatory and thus did not address the mandatory/optional distinction or the effect of the conflicting agency interpretations. 434 U.S. at 197 n.4, 98 S.Ct. at 447 n.4. In discussing these inconsistent interpretations, the court in *Zinger* stated:

> In adopting this stance, [in the 1975 Report] the Secretary ignored the obvious and important distinction implicit in his previous bulletin between discharge without pay and retirement on a pension. Moreover, the Secretary's latter day position is not only contrary to that taken by his predecessor contemporaneously with the consideration and passage of the Act, but also to the views of the Congressional committees which declined that proposal when it was forthrightly presented to them. Thus, rather than proposing an amendment to Congress, as Congress had instructed, the Secretary seeks to change the Act by court decision or administrative fiat.

549 F.2d at 908 (footnote omitted).

■ Jensen asserts that Gulf could not have relied in good faith on the validity of its action since "the only authoritative interpretation of the section at issue, as it applies to involuntary *discretionary* retirements, in effect when Gulf terminated Plaintiff was the ruling issued by the Department of Labor in 1975."[7] Appellant's Brief at 14. The statute itself does not except from exemption otherwise qualified plans pursuant to which involuntary retirement is at the employer's option nor does it require that there be reasons other than age for involuntary early retirement. *See*

7. 29 U.S.C. § 626(e) (1976) makes the good faith defense set out in the Portal To Portal Act applicable to actions brought under the ADEA. That defense provides in pertinent part as follows:

> [N]o employer shall be subject to any liability or punishment . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency . . . or any adminis-

trative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

29 U.S.C. § 259(a) (1976). Gulf does not appear to rely on this defense.

*Zinger,* 549 F.2d at 908. Furthermore, courts may decline to follow administrative guidelines when they are inconsistent with earlier agency interpretations. *See General Electric Co. v. Gilbert,* 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 44 (1976).

We are of the opinion that Gulf's reliance on the validity of its action was reasonable in spite of the existence of the 1975 report. In *Sikora,* the plaintiffs were retired in September 1975 and January 1976 and the Third Circuit stated:

> [A]t that time the defendant had an interpretive ruling of the Secretary of Labor and a court of appeals opinion sustaining the position that the ADEA permitted involuntary retirement before age 65. Plaintiffs at that juncture therefore had no firmly established right to continue in employment until they reached the age of 65. On the other hand, much as we sympathize with plaintiffs' position, the defendant had the contractual option to retire its employees as permitted by the plan. To that extent, the rights and obligations of the company—and of the plaintiffs as well—had been fixed and in place in 1975 and 1976 when they retired. In such circumstances, post-*Bradley* cases have declined to apply new law to pending cases.

22 FEP at 643 (footnote and citations omitted).

We conclude that application of the amended version of § 623(f)(2) to Gulf's conduct in this case would deprive Gulf of matured, substantive rights in contravention of Gulf's reasonable expectation that its conduct would be valid. We agree with the district court that application of the amendment in this case would result in manifest injustice, that it

> would penalize good faith reliance upon statutory law, and would impose hardship not only upon Gulf but upon the entire business community in obligating them to reinstate and reimburse retired individuals who could reasonably have been thought to be lawfully retired pursuant to bona fide retirement plans.

*Jensen v. Gulf Oil Refining & Marketing Co.,* No. H–78–99 at 5 (S.D.Tex., filed Feb. 12, 1979). Accordingly, we hold that the 1978 amendment to 29 U.S.C. § 623(f)(2) should not be applied retroactively to involuntary retirements occurring before April 6, 1978, the effective date of the enactment.

## IV. LAWFULNESS OF GULF'S CONDUCT UNDER UNAMENDED VERSION OF § 623(f)(2)

Finally, we turn to the remaining question whether Gulf's action was unlawful under the unamended version of § 623(f)(2) in effect at the time of Jensen's retirement. That subsection, quoted above, makes lawful involuntary retirement pursuant to a bona fide pension plan that is not a subterfuge to evade the purposes of the ADEA. A retirement plan is bona fide if it is genuine and pays substantial benefits. *See, e. g., Marshall v. Hawaiian Telephone Co.,* 575 F.2d 763, 766 (9th Cir. 1978); *Brennan v. Taft Broadcasting Co.,* 500 F.2d 212, 217 (5th Cir. 1974); *McKinley v. Bendix Corp.,* 420 F.Supp. 1001, 1003 (W.D.Mo. 1976). Since Gulf's plan has been in effect continuously since its establishment in 1944, it cannot be a subterfuge to evade the purposes of the ADEA, passed twenty-three years later. *See, e. g., United Air Lines, Inc. v. McMann,* 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977); *Brennan v. Taft Broadcasting Co.,* 500 F.2d at 215. In *McMann,* the Court rejected any "*per se* rule requiring an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act." 434 U.S. at 203, 98 S.Ct. at 450 (footnote omitted).

Jensen concedes that the plan is bona fide and not, in and of itself, a subterfuge. Appellant's Brief at 7. Jensen argues, however, that although facially qualified, the plan may be applied to certain individuals in such a way as to constitute a subterfuge. *Id.* at 5. Appellant argues that under the Gulf plan at issue the discretion afforded the employer in deciding whether to exercise its option to force an employee to retire early could result, and in Jensen's case did result, in the plan's being applied in a manner violative of the ADEA. *Id.*

We disagree. Although there is some conflict in the cases, several courts have upheld involuntary early retirements under plans permitting the employee to be retired after he reaches a certain age at the option of the employer.[8] *See, e. g., Marshall v. Hawaiian Telephone Co.,* 575 F.2d 763 (9th Cir. 1978); *Minton v. Whirlpool Corp.,* 569 F.2d 1012 (7th Cir. 1978); *Zinger v. Blanchette,* 549 F.2d 901 (3d Cir. 1977), *cert. denied,* 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978); *Brennan v. Taft Broadcasting Co.,* 500 F.2d 212 (5th Cir. 1974) (plan at issue called for retirement at age sixty absent employer's consent to work until a later date; plaintiff was retired at sixty; option issue not discussed); *Marshall v. Baltimore & Ohio Railroad Co.,* 461 F.Supp. 362 (D.Md.1978); *Marshall v. Atlantic Container Line,* 18 FEP 1167 (S.D.N.Y.1978); *McKinley v. Bendix Corp.,* 420 F.Supp. 1001 (W.D.Mo.1976); *cf. Thompson v. Chrysler Corp.,* 569 F.2d 989, 993 (6th Cir. 1978) (involuntary retirement pursuant to employer option plan upheld; "[b]ecause the Chrysler plan requires consideration of other factors which are related to an employee's ability to perform work satisfactorily it is in harmony with the stated purpose of the Act"); *Mason v. Lister,* 562 F.2d 343, 346 (5th Cir. 1977) (retirement scheme not a subterfuge "because it is strictly optional with the employees"; scheme also predated ADEA). *But see Marshall v. American Motors Corp.,* 475 F.Supp. 875 (E.D.Mich.1979); *Cowlishaw v. Armstrong Rubber Co.,* 450 F.Supp. 148 (E.D.N.Y.1978); *Hannan v. Chrysler Motors Corp.,* 443 F.Supp. 802 (E.D.Mich.1978). As we have noted, the Supreme Court did not reach the issue in *McMann* since it concluded that the plan there in question called for mandatory retirement at age sixty. 434 U.S. at 197 n.4, 98 S.Ct. at 447 n.4. We follow the weight of authority in holding that under the unamended version of § 623(f)(2), Gulf's action in involuntarily retiring Jensen pursuant to the terms of its plan, which was bona fide and not a subterfuge, was not unlawful, despite the discretion afforded Gulf.[9]

AFFIRMED.

---

**8.** As has been stated, under Gulf's plan, the employee may be retired at age sixty-five or after the sum of his age plus years of service with Gulf equals or exceeds seventy-five. We see no basis to distinguish Gulf's option under the terms of this plan from the employer's option under the terms of a plan permitting the employee to be retired after he reaches a certain age.

**9.** For the reasons set forth in the discussion concerning the mandatory/optional distinction and the conflicting agency interpretations in Part III B of the text, we are convinced that the weight of authority reaches the correct conclusion.