575 F.2d 763
 17 Fair Empl.Prac.Cas. 1091, 17 Empl. Prac.
Dec. P 8398,
1 Employee Benefits Ca 1664
F. Ray MARSHALL (Successor to Usery), Secretary of Labor,
United States Department of Labor, Appellant,
v.
HAWAIIAN TELEPHONE COMPANY, Appellee.
 No. 76-2874.
 United States Court of Appeals,
Ninth Circuit.
 May 26, 1978.
 
 Daniel W. Teehan, U.S. Dept. of Labor, Washington, D.C., for appellant.
 Jared H. Jossem of Torkildson, Katz, Conahan, Jossem & Lodin, Honolulu, Hawaii, for appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before ELY, HUFSTEDLER and WRIGHT, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 The Secretary of Labor appeals from the district court's summary judgment that Hawaiian Telephone Company (Hawtel) did not violate section 4 of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 623 (1970), by its involuntary retirement of employees because of age.
 
 
 2
 On appeal, we view the record in the light most favorable to the Secretary, who opposed the motion for summary judgment. Hughes v. IBT Local 683, 554 F.2d 365, 367 (9th Cir. 1977). So viewed, it appears that Hawtel, between September 1972 and June 1973, retired at least eight employees who had not yet reached age 65, solely because of age.
 
 
 3
 The Secretary brought this action in August 1975 to require Hawtel to rehire the discharged employees and to enjoin Hawtel from using age as the sole basis for retiring employees not yet 65.[1] The district court held that the retirements did not violate the ADEA because Hawtel paid sufficient retirement benefits to the eight persons pursuant to its bona fide retirement plan. Dunlop v. Hawaiian Telephone Co., 415 F.Supp. 330, 333 (D.Haw.1976).
 
 
 4
 Hawtel established its retirement plan in 1931. All employees hired thereafter were members of and contributed to the plan as a condition of employment. Hawtel also contributed on behalf of covered employees.
 
 
 5
 The parties agree that the plan pays substantial benefits.[2] Upon retirement an employee receives an annuity of 1.65 percent of his or her average final salary multiplied by the number of years of creditable service.
 
 
 6
 The plan permits but does not require Hawtel to retire any employee who reaches age 60.[3] Its Personnel Guide provides that employees performing satisfactorily will normally be permitted to work until age 65.[4]
 
 
 7
 We deferred submission of this appeal pending the Supreme Court's opinion in United Air Lines, Inc. v. McMann, --- U.S. ----, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). Counsel accepted our invitation to submit supplemental memoranda commenting on McMann, and the appeal was then submitted.
 
 I.
 
 8
 Section 4(a) of the ADEA[5] prohibits discharging employees between the ages of 40 and 65 because of age. Hawtel argues, however, that because the challenged retirements conform to its employee retirement plan, they are permissible under ADEA's section 4(f)(2) exception, which provides:
 
 
 9
 (f) It shall not be unlawful for an employer, employment agency, or labor organization
 
 
 10
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual.
 
 
 11
 29 U.S.C. § 623(f)(2) (1970). The sole issue we address is whether the retirements fall within the section 4(f)(2) exception.
 
 
 12
 The Secretary argues that Hawtel may not take advantage of the exception because: (1) the retirement plan is a "subterfuge to evade the purposes" of the ADEA; (2) the retirement plan is not "bona fide"; and (3) by retiring employees involuntarily, Hawtel did not "observe the terms of" its retirement plan.
 
 II.
 
 13
 In deciding whether Hawtel's plan is a "subterfuge to evade the purposes" of the ADEA, we are guided by the Supreme Court's decision in United Air Lines, Inc. v. McMann, supra. McMann was a technical specialist who joined United's optional retirement plan in 1964. The application form showed that the normal retirement age was 60 years. After United retired McMann at age 60, he sought relief under the ADEA. United claimed that the forced retirement fell within the section 4(f)(2) exception. The district court granted summary judgment for United on stipulated facts.
 
 
 14
 On appeal the parties conceded that the plan was bona fide in the sense that it existed and paid benefits. McMann contended, however, the enforcement of the plan's age-60 retirement provision was a subterfuge to evade the purposes of the ADEA.
 
 
 15
 The Court of Appeals reversed the summary judgment for United, holding that a forced pre-age 65 retirement is a subterfuge unless the early retirement provision has an economic or business purpose other than arbitrary age discrimination. McMann v. United Air Lines, Inc., 542 F.2d 217 (4th Cir. 1976).
 
 
 16
 The Supreme Court reversed, rejecting the Fourth Circuit's subterfuge analysis and refusing to read a business purpose requirement into section 4(f)(2). The Court held that a plan established in 1941 and conceded to be bona fide cannot be a subterfuge to evade the purposes of the ADEA, enacted in 1967. 98 S.Ct. at 450. See Minton v. Whirlpool Corp., 569 F.2d 1012 (7th Cir. 1978).
 
 
 17
 Hawtel established its retirement plan in 1931 and the Secretary now concedes that after McMann, Hawtel's plan, if bona fide, cannot be a subterfuge to evade the purposes of the ADEA.
 
 III.
 
 18
 The Secretary concedes that the retirement plan is genuine and that it pays substantial benefits. Nevertheless, he contends that the plan is not "bona fide" as required by section 4(f)(2) because the plan did not adequately notify employees that Hawtel had the option to retire an employee involuntarily at age 60 without regard to his or her job performance.
 
 
 19
 We reject the argument on legal and factual grounds. The district court had "no difficulty in concluding that Hawtel's plan is a bona fide employee benefit plan." 415 F.Supp. at 331.
 
 
 20
 A retirement plan is bona fide if it is genuine and actually pays substantial benefits. See Brennan v. Taft Broadcasting Co., 500 F.2d 212, 217 (5th Cir. 1974); McKinley v. Bendix Corp., 420 F.Supp. 1001, 1003 (W.D.Mo.1976). The Secretary concedes that the plan is genuine and pays substantial benefits. Under the facts of this case, the plan is bona fide.
 
 
 21
 Section 3(b) of the Rules and Regulations of Hawtel's Retirement System explicitly provides that Hawtel may retire any employee who has attained age 60.[6] There is not the slightest hint in the record that Hawtel withheld information about the plan from employees, nor is there a suggestion of any kind of deception that would taint the bona fides of a plan that concededly provides substantial benefits.
 
 IV.
 
 22
 The Secretary contends that the section 4(f)(2) exception for employers acting "to observe the terms of" a plan does not apply unless the plan requires retirement at a certain age. According to the Secretary, forced retirements solely at the employer's option, though permitted by the plan, do not qualify for the exception.[7]
 
 
 23
 The Secretary reasons that an employer "observes" the terms of a plan only where the employer is forced by its terms to retire an employee. Where an employer chooses to retire an employee, according to the argument, the employer is not passively "observing" the plan. See Brennan v. Taft Broadcasting Co., 500 F.2d at 220 (Tuttle, J., dissenting).
 
 
 24
 After careful consideration, we reject the Secretary's position that an employer does not "observe the terms of" a plan by exercising the option permitted by a plan to force retirement on an employee. We find support for our conclusion in the Department of Labor's own interpretation of section 4(f) (2), issued when the ADEA became effective:(T)he Act authorizes involuntary retirement irrespective of age, provided that such retirement is pursuant to the terms of a retirement or pension plan meeting the requirements of section 4(f)(2). The fact that an employer may decide to permit certain employees to continue working beyond the age stipulated in the formal retirement program does not, in and of itself, render an otherwise bona fide plan invalid insofar as the exception provided in section 4(f)(2) is concerned.
 
 29 C.F.R. § 860.110(a) (1977).[8]
 
 25
 In Zinger v. Blanchette, 549 F.2d 901 (3d Cir. 1977), cert. denied, --- U.S. ----, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978), the plaintiff was retired pursuant to a plan that allowed but did not require the employer to retire employees between the ages of 60 and 65. The plaintiff urged the court to adopt the position that the Secretary advocates in the present case. The court refused, holding that the statute does not limit its exemption to those plans that require rather than merely permit pre-65 forced retirements. Id. at 909.
 
 
 26
 We choose to join the Zinger court in reading the language of section 4(f)(2) as permitting an employer to exercise the option of retiring employees pursuant to a bona fide retirement plan even where the plan does not require such retirements.[9] See Thompson v. Chrysler Corp., 569 F.2d 989, 992-93 (6th Cir. 1978); McKinley v. Bendix Corp., 420 F.Supp. at 1003; Steiner v. National League of Professional Baseball Clubs, 377 F.Supp. 945 (C.D.Cal.1974). But see Brennan v. Taft Broadcasting Co., 500 F.2d at 220 (Tuttle, J., dissenting); Hannan v. Chrysler Motors Corp., 443 F.Supp. 802 at 804 (D.C.1978).
 
 
 27
 Were we to adopt the Secretary's approach, we would be advancing the anomalous position that Hawtel would not have violated the Act by forcing retirement on all employees at age 60 but would have violated it by allowing some of them to work past that age. We cannot accept such a result.
 
 V.
 
 28
 We conclude that Hawtel did not violate the ADEA by forcing employees to retire pursuant to its bona fide retirement plan. Accordingly, we need not reach the question whether the Secretary's action may have been barred by the applicable statute of limitations.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 The Secretary does not dispute that Hawtel may discharge employees for cause. See ADEA § 4(f)(3), 29 U.S.C. § 623(f)(3) (1970)
 
 
 [2]
 The eight involuntarily retired employees received plan benefits totalling $120,680.15 between September 1972 and August 1975
 
 
 [3]
 Section 3(b) of the Rules and Regulations of Hawtel's Retirement System provides:
 Any member who has attained age sixty may retire on written application to the Board of Managers made by the employee, or by the Company, setting forth a date, not less than thirty days and not more than ninety days following the date of the filing of the application, on which retirement is desired. The Board of Managers shall retire such member on the day so specified or on the first day of the calendar month next following.
 (Emphasis added.) Employees reaching age 70 are retired absent a special resolution:
 Any member who has attained age seventy shall be retired by the Board of Managers on a date not more than ninety days next following the date on which age seventy is attained unless the Board of Directors or corresponding board of the Company shall by resolution instruct that such member be retained in service for a specified period.
 Id. § 3(c).
 
 
 [4]
 Personnel & Contract Administration Guide, art. XIX, § 4 provides:
 Retirement
 A. See Rules and Regulations of the Retirement System.
 B. Normally, employees will be permitted to work until age 65 provided they are capable of performing their present functions satisfactorily. Approval for continued employment after age 60, which shall be on a year by year basis, shall be obtained from the appropriate Department Head.
 C. Employment should not continue beyond age 65 unless there is an emergency or extremely unusual circumstances exist. In such cases, the extension beyond age 65 should be for a specific period only and approval by the Board of Directors will be required.
 D. The retirement date for employees who are permitted to work until age 65 will be established as the first of the month following the employee's 65th birth date (sic).
 (Emphasis added.) The record does not indicate whether Hawtel distributed the Personnel Guide to all employees.
 
 
 [5]
 The statute provides in pertinent part:
 (a) It shall be unlawful for an employer
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . .
 29 U.S.C. § 623(a)(1) (1970). Section 12 of the ADEA, 29 U.S.C. § 631 (1970), limits its prohibitions to persons at least 40 but less than 65 years of age.
 
 
 [6]
 See notes 3-4 supra
 
 
 [7]
 In McMann the plaintiff argued that, because the plan allowed United discretion to retain employees past age 60, United did not retire him to observe the terms of the plan, as required by § 4(f)(2)
 The Court noted that although United had discretion to retain employees past age 60, it had never exercised that discretion but had retired all employees at age 60. The Court therefore regarded the plan as requiring retirement at age 60 rather than as permitting it at United's option. See 98 S.Ct. at 447 & n.4.
 Accordingly, McMann did not reach the mandatory-optional distinction that the Secretary advocates here.
 
 
 [8]
 Although § 860.110(a) has not been eliminated from the Code of Federal Regulations, the Department of Labor now considers mandatory retirement to be unlawful "unless the mandatory retirement provision . . . is required by the terms of the plan and is not optional . . . ." U. S. Dep't of Labor, Annual Report on Age Discrimination in Employment Act of 1967, at 17 (1975), cited in United Air Lines, Inc. v. McMann, --- U.S. at ----, 98 S.Ct. at 447, n.4, and in Zinger v. Blanchette, 549 F.2d at 908
 Hawtel's Vice President of Personnel submitted an affidavit stating that Hawtel relied upon the Department of Labor's interpretation with respect to all involuntary retirements after September 1972. If in fact it relied in good faith on § 860.110(a), there can be no liability under the ADEA for the forced retirements.
 Section 7(e) of the ADEA, 29 U.S.C. § 626(e) (1970), incorporates by reference section 10 of the Portal-to-Portal Act of 1947, which provides in relevant part that "no employer shall be subject to any liability . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency . . . ." 29 U.S.C. § 259 (1970).
 
 
 [9]
 Our reading of the relevant language will have limited prospective impact. The Age Discrimination in Employment Act Amendments of 1978, Pub.L. No. 95-256, § 2, 92 Stat. 189 (1978), prohibits any retirement plan from requiring or permitting the involuntary retirement of any individual because of age. See also United Air Lines, Inc. v. McMann, --- U.S. at ----, 98 S.Ct. at 458 (Marshall & Brennan, JJ., dissenting)