**James F. CARPENTER,
Plaintiff–Appellee,**

v.

**CONTINENTAL TRAILWAYS,
Defendant–Appellant.**

No. 78–1278.

United States Court of Appeals,
Sixth Circuit.

Argued June 3, 1980.

Decided Dec. 18, 1980.

---

4. The panel opinion in *Isaac v. Engle* is reported in (6th Cir. 1980).

Anna F. Hinds, Stone & Hinds, Knoxville, Tenn., Edward R. Young, Memphis, Tenn., Dwight K. Luter, Tylertown, Miss., Arnold E. Perl, Memphis, Tenn., for defendant–appellant.

E. H. Rayson, Warren L. Gooch, Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, Tenn., for plaintiff–appellee.

Before: ENGEL, MERRITT and BOYCE F. MARTIN, Jr., Circuit Judges.

MERRITT, Circuit Judge.

The issue in this case is whether Carpenter's forced retirement under a pension plan at age sixty–one after thirty–one years of service with Continental Trailways violates the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA" or "the Act"). After a bench trial the District Court held that Trailways violated the Act when it retired Carpenter because of his age. 446 F.Supp. 70 (E.D.Tenn.1978). We reverse because § 4(f)(2) of the Act, prior to the 1978 amendments, allowed such retirements under a bona fide pension plan.

### I.

Carpenter began working in 1946 for an independent company later acquired by Trailways. Since that time he worked in managerial positions for Trailways in Tennessee and the Los Angeles area. Carpenter received commendations for his work and was never reprimanded, and all but one of his transfers were promotions to higher status positions. In 1976 he was appointed Los Angeles Area General Manager, and later that year he received a favorable evaluation from his superior, a Regional Senior Vice President, who stated that Carpenter was capable of immediate promotion to assume that position. Trailways, however, was experiencing serious financial difficulties, and in February 1977 the new President announced a reorganization of the company that would reduce the number of managerial positions. The eighteen positions at Carpenter's level nationwide were reduced to nine, and the four Regional Senior Vice President positions were reduced to two. Seven middle and upper level management employees in the western region were involuntarily retired; others were found new positions within Trailways. All of the seven retirees were between sixty and sixty–five years of age. Carpenter, then sixty–one years old, was notified that he was one of the persons sacrificed by the consolidation of managerial jobs, and that he would be retired as of March 31, 1977. The parties dispute whether Carpenter ex-

pressed interest in finding alternate employment with Trailways. The District Court found that he was interested in continued employment but that Trailways failed to offer him real alternatives. After weighing the evidence, the district court also found that Carpenter was involuntarily retired by Trailways. These findings by the court below are not clearly erroneous, and we accept them.

## II.

Trailways' summary judgment motion is based upon § 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2), which presents an exception to the prohibitions stated in §§ 4(a)–(e).[1] Section 4(f)(2), before amendment in 1978, reads as follows:

> It shall not be unlawful for an employer ... to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter ....

Congress enacted this broad exception with the expressed intention of revising it as necessary following studies commissioned after enactment of the ADEA in 1967.

Carpenter was retired pursuant to a retirement plan enacted in 1974, which permitted retirement *at the option* of either the employer or the employee at any time after the employee reaches the age of fifty-five. Trailways relies upon the Supreme Court decision in *United Airlines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), which held that the ADEA did not prohibit early retirement pursuant to a mandatory retirement provision in a bona fide plan, even if age is the sole basis for early retirement.

The *McMann* decision was overruled by the 1978 amendments to the ADEA, which, *inter alia*, added the following clause to § 4(f)(2): "and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual ...." *See* Sen.Rep.No.95–493, 95th Cong., 2d Sess. (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 504, 512–13. An initial question confronting this court is whether the amendment should be applied retroactively to the case before us. We are convinced by the thorough discussions in *Marshall v. Atlantic Container Line*, 18 FEP Cas. 1167 (S.D.N.Y.1978), and *Marshall v. Baltimore & Ohio R. Co.*, 461 F.Supp. 362 (D.Md.1978), that the Congressional intent in enacting the 1978 amendments and the judicial doctrines concerning retroactivity militate against the retroactive application of amended § 4(f)(2). We therefore apply the law as it stood when this controversy arose.

## III.

According to § 4(f)(2), an employer must "observe the terms" of a "bona fide ... plan" that is not "a subterfuge to evade the purposes" of the Act, in order to be exempt from the proscriptions of the ADEA when retiring an employee at an age earlier than that prescribed in the Act. Trailways' retirement plan is bona fide. A plan that exists and pays substantial benefits—as does Trailways'—satisfies this criterion. *McMann, supra*, at 194, 98 S.Ct. at 446; *Marshall v. Hawaiian Telephone Co.*, 575 F.2d 763, 766 (9th Cir. 1978); *Brennan v. Taft Broadcasting Co.*, 500 F.2d 212, 217 (5th Cir. 1974).

---

1. The language of sections (a), (b), and (c) parallels that of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a), (b), and (c). Section 4(a) of the ADEA makes it unlawful for an employer to discharge or fail to hire a person, or to discriminate with respect to compensation or conditions of employment, or to classify or segregate an employee in a manner that would deprive him of employment opportunities, because of that person's age. Sections (b) and (c) similarly forbid discrimination or segregation because of age on the part of employment agencies and labor organizations. Section (d) protects from discrimination any person who has opposed a practice made unlawful by the Act. Finally, section (e) forbids publication of any notice or advertisement relating to employment that indicates a preference or limitation based upon age.

A major question in this appeal is whether this Circuit should follow the Ninth and Third Circuits in *Hawaiian Telephone, supra,* and *Zinger v. Blanchette,* 549 F.2d 901 (3d Cir. 1977), *cert. denied,* 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978), which held that for the purpose of the § 4(f)(2) exception no distinction between mandatory and optional early retirement plans is meaningful and that the exception should be extended to apply to an employee such as Carpenter, dismissed at the employer's option. The Supreme Court found that the retirement plan in *McMann* mandated early retirement (at the age of sixty) and reserved the question of the legality of early retirement at the employer's option.[2]

▪ We agree with Judge Weis's opinion for the Third Circuit in *Zinger* that Congress revealed no intent to distinguish between optional and mandatory retirement provisions. Although the Secretary later distinguished optional from mandatory retirement plans, U.S. Dept. of Labor Annual Report on the [ADEA], at 17 (1975), *quoted in Zinger, supra,* at 908, no evidence has been presented to persuade us that this distinction informed the original enactment of § 4(f)(2). *See Zinger, supra,* at 905–09. In retiring Carpenter, Trailways acted as permitted by its retirement plan; it did not violate the provisions of that plan. Therefore, in exercising its option to retire Carpenter, Trailways "observed the terms" of the plan as required under § 4(f)(2).

The final issue is whether Trailways' plan is a subterfuge. Most of the cases discussing this question concerned retirement plans set up prior to the enactment of the ADEA. They held that in such circumstances no subterfuge could exist. *McMann, supra,* at 203, 98 S.Ct. at 450; *Minton v. Whirlpool Corp.,* 569 F.2d 1012 (7th Cir. 1978); *Baltimore & Ohio R. Co., supra,* at 374. *But see Zinger, supra,* at 904 (mere fact that plan established prior to

enactment of ADEA not sufficient to prove plan not a subterfuge). The retirement plan involved in the present case was set up in 1974, after the enactment of the ADEA. In this situation the plan should undergo more thorough scrutiny to determine whether its early retirement provisions were established to evade the purposes of the Act.

The Supreme Court in *McMann* states the test of "subterfuge": "In ordinary parlance, and in dictionary definitions as well, a subterfuge is a scheme, plan, strategem, or artifice of evasion. In the context of this statute, 'subterfuge' must be given its ordinary meaning . . . ." 434 U.S. at 203, 98 S.Ct. at 450. In the present case we find no evidence that Trailways' retirement plan was adopted in 1974 as a strategem or artifice to evade the requirements of the ADEA. Rather, it appears to have been adopted for the same reason that many companies and governmental agencies have adopted optional retirement plans. Evidence exists that the plan was a legitimate instrument created to provide for the retirement of the company's employees.

Carpenter argues that Trailways' retirement plan cannot be bona fide and was a subterfuge because its early retirement provisions were not explicitly presented in the text of the certain materials circulated to the employees affected. *See Taft Broadcasting, supra,* at 218–20 (Tuttle, J., dissenting). There is some dispute in the present case whether Trailways made known and whether Carpenter knew of the employer's early retirement option. A complete copy of the retirement plan was available to the employees, however, and there is no evidence that Trailways misrepresented or concealed the terms of the plan.

Having found that Trailways' retirement plan satisfies each of the criteria necessary for exemption under § 4(f)(2), we hold that

---

**2.** The Court stated,

> The Department [of Labor]'s more recent position on . . . section [4(f)(2)] is that pre–65 retirements "are unlawful unless the mandatory retirement provision . . . is required by the terms of the plan and is not optional

. . . ." . . . Having concluded . . . that the United plan calls for mandatory retirement at age 60, however, we need not consider this further.

434 U.S. at 197 n.4, 98 S.Ct. at 447 n.4.

Carpenter's retirement pursuant to that plan was not in violation of the ADEA. We need not, therefore, reach the question whether there was evidence to support the District Court's finding that age was a determining factor in the decision to retire Carpenter. Accordingly, the judgment of the District Court is reversed.