Sylvia M. SLUSHER, Plaintiff,

v.

HERCULES, INCORPORATED,
Defendant.

Civ. A. No. 78–0068–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Feb. 17, 1982.

Harriet Dickinson Dorsey, Blacksburg, Va., Donald W. Huffman, Roanoke, Va., for plaintiff.

Edwin C. Stone, Timothy C. Kavanaugh, Radford, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

### I. INTRODUCTION

Plaintiff, Sylvia M. Slusher, brings this suit against her former employer, Hercules, Incorporated, alleging that Hercules violated the Age Discrimination in Employment Act of 1967 (ADEA), by forcing her to retire pursuant to the defendant's disability provision of its pension plan. Mrs. Slusher contends that Hercules unlawfully terminated her from her employment due to her age. This case is presently before the court on the defendant's motion for summary judgment on the basis that plaintiff was retired pursuant to the provisions of a bona fide pension plan which was not established as a subterfuge to evade the purposes of the ADEA. For the reasons stated below, the defendant's motion for summary judgment is granted.

### II. FACTS

The pleadings show that the plaintiff is presently sixty years of age, and was employed by the defendant from March 12, 1951 until her termination in 1976. On May 6, 1976, the plaintiff was instructed by her supervisor to report to the company doctor's office. When she arrived, the doctor informed her she was being given a pension based on disability. She received a form notice entitled "Termination of Employment for Salaried and Wage Employees" dated 5/6/76. The plaintiff's name appears below that date, and below her name are the words "Effective Date of Termination", followed by the date 5/31/76. The plaintiff was paid her regular salary and employee benefits from May 6 through May 31, at which time her employment was officially terminated by Hercules, Inc., and disability pension benefits began. Plaintiff, believing she had been unlawfully discriminated against because of her age, attempted without success to effect a reconciliation with the defendant through the United States Department of Labor. Failing to obtain an administrative settlement, plaintiff filed a civil action in this Court alleging age dis-

crimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 et seq.

The defendant filed a motion for summary judgment with this court on February 11, 1981. Defendant contends that plaintiff was involuntarily retired on May 5, 1976, pursuant to the terms of an employee benefit plan that has been in effect at Hercules since January 1, 1959. Defendant argues that its retirement plan, which includes involuntary disability retirement, is a bona fide retirement and disability pension plan which was in effect prior to the enactment of the Age Discrimination in Employment Act. Therefore, the defendant concludes, the retirement of the plaintiff cannot be in violation of the ADEA since it observed the terms of a bona fide plan which was not a subterfuge to evade the purposes of the ADEA.

## III. STATUTES

The purpose of the ADEA is stated as follows:

to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

29 U.S.C. § 621(b) (1976). Under the ADEA it is unlawful for an employer:

to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . .

29 U.S.C. § 623(a)(1).

At the time of Mrs. Slusher's retirement, § 623(f)(2) of the ADEA contained the following language permitting some involuntary retirements prior to normal retirement age:

(f) It shall not be unlawful for an employer, employment agency, or labor organization— .

\* \* \* \* \* \*

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual. . . .

29 U.S.C. § 623(f)(2) (amended 1978). In 1978, that subsection was amended to provide as follows:

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, *and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual.* . . .

29 U.S.C. at § 623(f)(2) (Supp.1981) (emphasis added). Congress provided that the amendment "shall take effect on the date of enactment of this Act [April 6, 1978]." Pub.L. No. 95–256 § 2(b), 92 Stat. 189.[1]

## IV. ISSUES

The first issue presented in this case is whether or not defendant's motion for summary judgment is so untimely as to constitute a waiver of the issues presented therein. If the court finds that defendant's motion is timely, the more important question

1. Counsel have made no argument that the 1978 amendment to subsection (f)(2) has retroactive effect. Therefore, the court makes no ruling on this point. However, it appears by the overwhelming weight of case law that congress did not intend such an effect. *See Jensen* *v. Gulf Oil Refining and Marketing Co.,* 623 F.2d 406 (5th Cir. 1980); *Sikora v. American Can Co.,* 622 F.2d 1116 (3rd Cir. 1980); *Marshall v. Baltimore & Ohio R. Co.,* 461 F.Supp. 362 (D.Md.1978), *modified,* 632 F.2d 1107 (4th Cir. 1980).

remains whether Hercules' action was unlawful under the unamended version of § 623(f)(2), which was in effect at the time of Mrs. Slusher's retirement. Answering both questions in the negative, the court grants summary judgment to the defendant.

## V. TIMELINESS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's employment with Hercules, Incorporated, was terminated in May of 1976. From that time until the filing of her complaint in this ADEA suit on March 28, 1978, plaintiff and defendant, through counsel and with the assistance of the U.S. Department of Labor, engaged in protracted settlement discussions. Defendant filed its answer to plaintiff's complaint on May 1, 1978, and that answer has never been amended or supplemented. Defendant filed its motion for summary judgment on or about February 9, 1981, with the trial of this case set to begin on February 25, 1981. Defendant presents only one argument upon which it relies in moving the Court to grant this motion: that Sylvia M. Slusher was not terminated or discharged, but "retired pursuant to a bona fide pension plan", which retirement is exempted from scrutiny under the provisions of the ADEA as it existed prior to the 1978 amendments.

It is plaintiff's position that defendant cannot be permitted to raise this issue when this defense was not raised in its answer. An examination of defendant's answer shows that it merely denied plaintiff's claims and raised certain affirmative defenses in Paragraphs 21 through 28, none of which hint at the defense defendant raises in its motion for summary judgment. Paragraph 25 is the only paragraph which refers to the subject matter of defendant's motion for summary judgment, and it does not mention that it is defendant's contention that Sylvia M. Slusher was "retired" and not "discharged". The plaintiff moves the Court to deny defendant's motion for summary judgment on the grounds that defendant failed to raise this issue in its

responsive pleadings as required by Rule 12 of the Federal Rules of Civil Procedure.

■ The court does not find that the defendant has waived its right to move for summary judgment on this defense by reason of its failure to plead the defense affirmatively in its answer. Defendant does not raise an affirmative defense which could be waived under Rule 8(c) of the Federal Rules of Civil Procedure. *See Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91 (5th Cir. 1976). Nor has the case progressed so far as to prejudice the plaintiff by allowing amendment of the defendant's answer. *Cf. id.* Rather, the court is guided by the Fourth Circuit's admonition that "[t]he principles governing summary judgment procedures should be applied in a common sense manner to the realities of the litigation at hand." *Williams v. Howard Johnson's Inc. of Washington*, 323 F.2d 102, 105 (4th Cir. 1963). Plaintiff's objection is "not tenable in view of the general purposes of the Rules that decisions should go on the merits and not on pleading technicalities, and for the further reason that the Rules prescribe most liberally for the amendment of pleadings." 6 Moore's Federal Practice ¶ 56.17[14]. *See Season-All Indus., Inc. v. Merchant Shippers*, 417 F.Supp. 998 (W.D.Pa.1976). Therefore, exercising the wide discretion available to this court in procedural matters, the court holds that defendant's motion for summary judgment, and defense therein, is without prejudice to the plaintiff, and thereby timely.

## VI. LAWFULNESS OF HERCULES' CONDUCT UNDER UNAMENDED VERSION OF § 623(f)(2)

According to subsection 623(f)(2), an employer must show (1) that it "observe[d] the terms" of a (2) "bona fide . . . plan" that (3) was "not a subterfuge to evade the purposes" of the Act, in order to be exempt from the restrictions of the ADEA when involuntarily retiring an employee at an age earlier than that prescribed by the Act. *Carpenter v. Continental Trailways*, 635 F.2d 578, 580 (6th Cir. 1980), *cert. denied*,

451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981); *E.E.O.C. v. Baltimore and Ohio R. Co.*, 632 F.2d 1107, 1110 (4th Cir. 1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1480, 67 L.Ed.2d 613 (1981). The parties in this case disagree as to whether the defendant has complied with each element of the exemption outlined in 29 U.S.C. § 623(f)(2).

### A. Is Defendant's Plan "Bona Fide" Under the ADEA?

Initially, plaintiff contends that defendant's pension plan is not "bona fide" because it does not pay substantial benefits. The parties agree that defendant's retirement and disability pension plan contemplates a flow of disability benefits of 66.67% of the employee's average monthly wage of the last five years before termination.[2] Defendant calculated plaintiff's average monthly earnings at $824.34.[3] However, plaintiff has been receiving a monthly pension from the defendant in the amount of $251.59, which is only 30.5% of her monthly earnings. Plaintiff contends that her benefits are so low as to constitute her discharge, rather than retirement in contemplation of the pension plan.

As a preliminary matter, the court must look at Hercules' pension program and characterize its essential components. Hercules employees have an opportunity to participate in three separate pension and disability plans. The Hercules Pension Plan provides for immediate participation by the employee, and the cost of the plan is paid by Hercules. The benefits under the plan are based on a formula using an average monthly earnings calculation and the Social Security Earnings Base.[4] The benefit received from the Hercules Pension Plan is in addition to any other benefit which an employee receives from Social Security.

Under the Hercules Group Life Insurance Plan, participation is voluntary and funded by the employee. Benefits are payable to the employee if, while insured, the employee becomes permanently and totally disabled by injury or illness before age 60, and so long as the insurance has been in force for 1 year.[5] The policy provides for 60 monthly payments, after a 6-month waiting period, which are based upon the employee's annual salary.

Finally, the Hercules Long Term Disability Insurance Plan (LTD) is also a voluntary plan in which the employee pays for the insurance at group rates. An employee qualifies for LTD benefits once he/she becomes totally disabled and remains so for 6 consecutive months. The amount of the LTD benefit is 66⅔% of any employee's basic monthly salary. However, the benefits are reduced by benefits received from collateral sources, including benefits from the Hercules Pension Plan, the permanent and total disability provisions of the Hercules Group Life Insurance Plan, and Social Security.[6] In bold type, the LTD plan warns, "Your LTD benefits will be reduced if you are eligible to receive any of the above benefits, whether or not you apply for them." [7] If not eligible for benefits from these other sources, the employee will receive the full 66⅔% of his/her basic monthly salary from the LTD plan.

It is under the LTD plan that plaintiff's first bone of contention lies. The LTD plan guarantees an insured the difference between the amount of other benefits received and the amount of 66⅔% of an employee's average monthly salary of the last five years before termination. However, plaintiff is presently receiving $251.49, merely 30.5% of her average monthly earnings. Plaintiff contends that such a discrepancy indicates that plaintiff's termination is tantamount to a discharge rather than retirement.

It is undisputed that plaintiff receives $251.49 monthly from Hercules. However, it is also undisputed that plaintiff failed to

---

2. Defendant's Exhibit No. 1, at B2–9.

3. Defendant's Exhibit No. 8A, at 9.

4. Defendant's Exhibit No. 1, at D1–10.

5. *Id.* at C1–10.

6. *Id.* at B2–9, B2–10.

7. *Id.* at B2–10.

seek benefits from any of the other available entitlement programs. Defendant's Exhibit No. 7 indicates that Mrs. Slusher failed to apply either for Social Security disability benefits or permanent total disability benefits under the Hercules Group Life Insurance Plan. Furthermore, she and her attorney disregarded persistent requests by the insurer for the proof of disability required under the permanent disability provisions of the Life Insurance Plan. In fact, plaintiff and her attorney appear to have consciously refused to seek supplemental benefits from any collateral programs for the purposes of this litigation.

Nevertheless, the LTD plan specifically stated that such collateral benefits, for which the plaintiff was eligible, were subject to setoff against the 66⅔% minimum of the LTD plan, notwithstanding plaintiff's failure to apply for them. According to Hercules' calculations, had Mrs. Slusher applied for and received benefits from the supplemental programs, she would not have been eligible for LTD benefits. Their figures show that her estimated earnings under the LTD rules was $827.14,[8] and that 66⅔% of Mrs. Slusher's salary at the date of her pension was $621.33.[9] Accordingly, no LTD plan benefits were due since Mrs. Slusher's projected monthly earnings were greater than the 66⅔% ceiling placed on the LTD benefit by the terms of the plan.

Plaintiff has not contested the validity of the figures submitted by the defendant. Rather, she contends that she was asked to perpetrate what she regarded as a fraud on Social Security since the Hercules Pension Plan retained the right to terminate her disability retirement pension benefits if she did not apply and qualify for Social Security benefits. Therefore, she did not apply for Social Security since she knew that she was not disabled.

The court feels that such an argument is spurious. Defendant's plan merely provides that if a claimant fails to qualify for Social Security benefits, the company may recalculate her pension on the basis of the Reduced Early Retirement provisions of the plan.[10] Hercules has subsequently recalculated plaintiff's benefits in accordance with this provision, and notified her of a decrease by $7.27 adjusting her benefits on September 1, 1981, from $261.55 to $254.34 per month.[11] This does not indicate that plaintiff must be found disabled by Social Security to receive pension benefits. Rather, it is merely a reclassification of plaintiff due to her own failure to seek disability Social Security benefits under the provisions of the Hercules Pension Plan.

The court is aware of the Supreme Court's passing subscription to the principle that an insufficient pension might invalidate a retirement plan under the ADEA. *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 198, 98 S.Ct. 444, 448, 54 L.Ed.2d 402 (1977). More specifically, Mr. Justice White noted:

> Rather, as I read the [legislative] history Congress intended to exempt from the Act's prohibition all retirement plans— even to those whose only purpose is to terminate the services of older workers— so long as the benefits they pay are not so unreasonably small as to make the 'retirements' nothing short of discharge.

*Id.* at 207, 98 S.Ct. at 452 (White, J., concurring). Accordingly, other courts have found that failure of a disability retirement plan to pay substantial benefits vitiates any notion that the plan is "bona fide". *Jensen v. Gulf Oil Refining and Marketing Co.*, 623 F.2d 406, 413 (5th Cir. 1980); *Marshall v. Hawaiian Telephone Co.*, 575 F.2d 763, 766

---

**8.** Mrs. Slusher's estimated earnings were computed, as follows:

| | |
|---|---|
| HERCULES PENSION | $251.59/month |
| (POSSIBLE) DISABILITY SOCIAL SECURITY | 370.00 |
| (POSSIBLE) PERMANENT TOTAL DISABILITY | 205.55 |
| | $827.14/month |

**9.** Mrs. Slusher's salary at the date of her termination and pension was $932.00 monthly. Two-thirds of this figure equals $621.33.

**10.** Defendant's Exhibit No. 1, at D1–11.

**11.** Letter to Sylvia M. Slusher from Hercules, Inc. dated August 5, 1981.

(9th Cir. 1978). The court concurs with these cases.

Yet, in the instant case, the payment of $251.59 to the plaintiff at the commencement of her pension does not truly represent the benefits that were available to her. Defendant's Pension Plan under its disability provision contemplates additional benefits through employee-purchased/employer-subsidized disability insurance. However, these benefits must be applied for, are dependent upon other entitlements received, and are subject to the insurer's disability determination. Plaintiff failed to apply for these benefits. Such a self-inflicted prejudice cannot be allowed to be used against the defendant.

Had plaintiff applied for these collateral benefits and been found not disabled, she might then have been able to sustain her contentions that the Hercules Pension Plan is not "bona fide". However, this question is not before the court today. The court can only assume, in accordance with the Hercules plans, that she was at the very least eligible to apply for collateral benefits. She cannot come before this court today and argue what may have been to the detriment of Hercules, having failed to previously seek and receive such a determination of non-disability.

■ For these reasons, the court holds that the plaintiff was retired by Hercules pursuant to a "bona fide" disability retirement pension plan. Accordingly, the court must reject the first of plaintiff's arguments.

B. Is Defendant's Retirement Plan a Subterfuge To Evade the Purposes of the Age Discrimination in Employment Act?

In deciding whether Hercules' plan is a "subterfuge to evade the purposes" of the ADEA, the court is guided by the Supreme Court's decision in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). In *McMann*, the employer terminated McMann under a pension plan with a mandatory early retirement age of 60 years. Upon his involuntary retirement at age 60, McMann sought relief under the ADEA claiming that the pension plan was a "subterfuge" within the meaning of the § 623(f)(2) exception to the restraints of the ADEA. The district court granted summary judgment for United on stipulated facts.

On appeal, McMann conceded that the retirement plan was bona fide since it existed and paid substantial benefits. However, he contended that the enforcement of the plan's age-60 retirement provision was a "subterfuge" to evade the purposes of the ADEA. Agreeing with McMann's analysis, the Fourth Circuit Court of Appeals reversed the district court's grant of summary judgment to United, holding that "in order to escape condemnation as a 'subterfuge' an early retirement provision must have some economic or business purpose other than arbitrary age discrimination." *McMann v. United Air Lines, Inc.*, 542 F.2d 217, 221 (4th Cir. 1976).

The Supreme Court rejected the Fourth Circuit's analysis of a "subterfuge" under the § 623(f)(2) exception. In an opinion reversing the Court of Appeals decision, Chief Justice Burger pointed out that a plan existing prior to enactment of the ADEA in 1967 cannot be a "subterfuge" within the context of the ADEA:

> [A] plan established in 1941, if bona fide, as is conceded here, cannot be a subterfuge to evade an Act passed 26 years later. To spell out an intent in 1941 to evade a statutory requirement not enacted until 1967 attributes, at the very least, a remarkable prescience to the employer. We reject any such *per se* rule requiring an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act.

*United Air Lines, Inc. v. McMann*, 434 U.S. at 203, 98 S.Ct. at 450. *Accord, Carpenter v. Continental Trailways*, 635 F.2d at 581; *Gonsalves v. Caterpillar Tractor Co.*, 634 F.2d 1065, 1066 (7th Cir. 1980), *cert. denied*, 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981); *Jensen v. Gulf Oil Refining and Marketing Co.*, 623 F.2d at 413; *Marshall v. Hawaiian Tel. Co.*, 575 F.2d at 765–66.

By affidavit, defendant certifies that the Hercules Pension Plan has been in effect since January 1, 1959. Plaintiff offers no proof to the contrary. Therefore, Hercules' plan, if bona fide, cannot be a subterfuge to evade the purposes of the ADEA.

The plaintiff denies that *United Air Lines, Inc. v. McMann* applies to the instant case since the Supreme Court addressed the issue of the legality of a retirement plan with a *mandatory* early retirement age. The Court specifically reserved the question of the legality of early retirement at the employer's option.[12] Instead, the plaintiff argues that she should have the opportunity to prove that the *use* of an admittedly bona fide pension plan in a discriminatory manner constitutes a "subterfuge" under the unamended version of the ADEA. Relying solely upon *Hannan v. Chrysler Motors Corp.*, 443 F.Supp. 802 (E.D.Mich.1978), plaintiff contends that she should be allowed to show that she was not disabled, and that such a finding by Hercules was a mere pretext.

In *Hannan*, the district court judge found that Chrysler violated the ADEA when it retired Hannan as a part of an austerity program necessitating a reduction in work force of employees over fifty-five years of age. Apparently, Chrysler was retiring older employees, while merely laying off younger employees and making it possible to recall them. Chrysler argued that it was observing an involuntary retirement option in its pension plan. The plaintiff alleged that Chrysler could not, as an alternative to placing her in lay-off status, arbitrarily force her to retire pursuant to a bona fide retirement plan. Finding that Chrysler's action was a discriminatory application of its retirement plan in violation of the ADEA, the district court stated:

Merely because we have found Chrysler's retirement plan a bona fide plan and not a subterfuge to evade the purposes of the Act when it was adopted in 1950 does not mean that Chrysler can never utilize the provisions of that plan in a discriminatory manner proscribed by the Act, once the exemption is inapplicable. In deciding whether to permanently retire the plaintiff or place her on layoff status, Chrysler considered only age.

443 F.Supp. at 804. *See also, Langman v. Western Electric Co.*, 488 F.Supp. 680 (S.D. N.Y.1980); *Marshall v. American Motors Corp.*, 475 F.Supp. 875 (E.D.Mich.1979); *Cowlishaw v. Armstrong Rubber Co.*, 450 F.Supp. 148 (E.D.N.Y.1978). *Contra, Gonsalves v. Caterpillar Tractor Co.*, 634 F.2d at 1067–69 (reasoning used in *Hannan, Langman, Marshall, Cowlishaw* held unpersuasive and without legislative or precedential support).

■ Upon reading *Hannan*, the court is of the opinion that it fails to substantiate plaintiff's contention that *use* of a bona fide plan may in some circumstances constitute a "subterfuge". In *Hannan*, the district court specifically found that "Chrysler's retirement plan was ... "not a 'subterfuge to evade the purposes' of the Act." 443 F.Supp. at 804. Instead, the *Hannan* court addressed the issue of whether "Chrysler did more than passively *observe* the terms of its retirement plan in placing [the] plaintiff on involuntary retirement." *Id.* Whether Hercules has "observed" the terms of its retirement plan is a distinct and separate element of the § 623(f)(2) exception, unrelated to the issue of whether the plan is a subterfuge.

Further, insofar as *Hannan* is contrary to the Sixth Circuit's analysis in *Thompson v. Chrysler Corp.*, 569 F.2d 989 (6th Cir. 1978), the court refuses to follow *Hannan*.[13] In

---

**12.** The Court stated:

The Department [of Labor]'s more recent position on ... Section [623(f)(2) ] is that pre-65 retirements "are unlawful unless the mandatory retirement provision...is required by the terms of the plan is not optional ..." ... Having concluded ...that the United plan calls for mandatory retirement at age 60, however, we need not consider this further. 434 U.S. at 197 n.4, 98 S.Ct. at 447.

**13.** The district court deciding *Hannan* resides within the Sixth Circuit. *Hannan* was decided on January 16, 1978. However, the Court of Appeals rendered its decision in *Thompson* on January 26, 1978. Therefore, this Court finds that *Thompson* is controlling in that circuit.

*Thompson,* Chrysler retired the plaintiff pursuant to the provisions of a bona fide disability retirement pension plan. Under the plan's provisions, Chrysler could retire early an employee who was over 55 years of age with 10 years pension credited service, and who

> suffers from a condition or disease which is deemed to be permanent and which partially disables that employee, *and* if that permanent partial disability results in excessive absenteeism, decreased production, and frequent application for and receipt of sickness and accident payments
> . . . .

*Id.* at 990. The district court granted summary judgment for Chrysler upon finding that the plaintiff was retired pursuant to a bona fide pension plan which was not a subterfuge. *See Thompson v. Chrysler Corp.,* 406 F.Supp. 1216 (E.D.Mich.1976).

Affirming the district court's decision, the Sixth Circuit Court of Appeals rejected plaintiff's argument that Chrysler was required to prove that plaintiff was disabled as well as the additional requirements of the early retirement provision. Noting that two requirements of § 623(f)(2) are that the employer observe the terms of the plan and that the plan not be a subterfuge, the court held that "[t]he plaintiff's evidence on the question of whether she was actually disabled did not address these questions." *Id.* at 992.

> The question of whether she was actually permanently disabled does not reflect in any way on the question of whether the plan is a subterfuge. The plan requires that a number of conditions be met. The fact that a subjective element enters into the determination of whether an employee's condition is permanent does not render the plan a subterfuge.

*Id.* Since the Chrysler plan required consideration of other factors related to an employee's ability to perform work satisfactorily, it was the type of plan which Con-

gress intended to recognize and validate in enacting § 623(f)(2).

■ Similarly, Mrs. Slusher cannot be allowed by this Court to present evidence on the question of whether she was actually disabled. Plaintiff tenders evidence, consisting of Affidavits from two treating physicians and the fact of present employment in a full-time position similar to the one she held at Hercules, to show that she was not, in fact, disabled at the time of her discharge. However, such evidence makes no showing of the existence of a genuine issue of whether the plan under which she was retired is a *subterfuge* to evade the purposes of the Act. Absent a showing of specific facts from which it could be found that others, similarly situated, were not treated in kind, this Court must find that Hercules' retirement pension plan is not a "subterfuge" under § 623(f)(2). *Accord, Carpenter v. Continental Trailways,* 635 F.2d at 581; *Jensen v. Gulf Oil Refining & Marketing Co.,* 623 F.2d at 413–14; *Zinger v. Blanchette,* 549 F.2d 901, 909 (3rd Cir. 1977) *cert. denied,* 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978).

## C. Did Hercules Observe the Terms of Its Retirement Pension Plan in Accordance with the ADEA?

Plaintiff urges that she should have the opportunity to prove at trial that Hercules did not "observe the terms" of its pension plan in accordance with the provisions of § 623(f)(2). Under the terms of the plan as outlined in the Employees Benefit Handbook,[14] plaintiff contends that the defendant must make two determinations: (1) that the employee is disabled, and (2) that this disability prevents the employee from performing his job with the degree of efficiency required by the company. Plaintiff argues that the defendant has failed to prove by some objective medical evidence

---

14. The Handbook states, in pertinent part:

> If ... the Hercules Board of Directors determines that because of your disability you are not able to do your job with the degree of efficiency required, you may be eligible for a Disability Pension. There is no age requirement for a Disability Pension.

Defendant's Exhibit No. 1, at D1–8.

that Mrs. Slusher was disabled, thereby failing to follow the terms of its plan.[15]

■ In determining whether Hercules has "observe[d] the terms" of its pension plan, the court does not agree with the district court's interpretation in *Hannan v. Chrysler Motors Corp.*, 443 F.Supp. 802 (E.D.Mich.1978) that the § 623(f)(2) term "observe" refers to an employer's passive acquiescence to *mandatory* retirement provisions of a pension plan. 443 F.Supp. at 804. *See, Brennan v. Taft Broadcasting Co.*, 500 F.2d 212, 220 (2d Cir. 1974) (Tuttle, J., dissenting). It is clear from the weight of authority that under the unamended version of § 623(f)(2), an employer's action in involuntarily retiring an employee pursuant to the terms of its plan, which is bona fide and not a subterfuge, is not unlawful, despite the discretion afforded the employer. *See Carpenter v. Continental Trailways*, 635 F.2d at 581; *Gonsalves v. Caterpillar Tractor Co.*, 634 F.2d at 1067–69; *Jensen v. Gulf Oil Refining and Marketing*, 623 F.2d at 414; *Marshall v. Hawaiian Tel. Co.*, 575 F.2d at 766–67; *Zinger v. Blanchette*, 549 F.2d at 909. Therefore, the only question before this Court is whether Hercules acted as permitted by its retirement plan.

Under the terms of the Handbook disability provision, an employee is eligible for pension benefits after he/she completes 10 years of credited service and "the Hercules Board of Directors determines that because of your disability you are not able to do your job with the degree of efficiency required [by the company]. . . ." [16] It is undisputed that Mrs. Slusher has completed 10 years of credited service. However, plaintiff contends that the defendant has not made the requisite finding of disability. Although Mrs. Slusher acknowledges that she "was found to be totally disabled by an employee of [the] Defendant",[17] she argues that such a finding was a sham and a pretext. In effect, plaintiff contends that the defendant has not made a good faith determination that plaintiff is disabled since Hercules did not "prove by some objective medical evidence that Sylvia Slusher was disabled . . . ." [18]

In *Thompson v. Chrysler Corp.*, 569 F.2d 989 (6th Cir. 1978), the court of appeals addressed similar issues and facts where Chrysler terminated the plaintiff pursuant to the disability retirement provision of a bona fide pension plan which was not a subterfuge to the ADEA. Chrysler determined that the employee was permanently disabled under the terms of its pension agreement. *See* p. 761 *supra*. Although Chrysler never caused the plaintiff to be examined by a physician to determine whether she was suffering from a permanent and partially disabling disease or condition, it did rely upon a number of statements from the plaintiff's attending physician indicating congestive heart failure and hypertension. In opposition to Chrysler's motion for summary judgment, the plain-

15. Defendant points to a disclaimer in the Handbook which states, "Should there be any differences in this summary and the formal text of the Plan, the formal text will govern." Defendant's Exhibit No. 1, at D1–4. The formal text states that a participant is eligible for a disability pension "provided the Board determines that the participant is permanently incapable of performing his ordinary work with the degree of efficiency required by the Company." Defendant's Exhibit No. 3.

16. Defendant's Exhibit No. 1, at D1–8.

17. Plaintiff's Supplemental Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, at 9. In addition to Plaintiff's acknowledgement, there is other evidence that Defendant's physician found Mrs. Slusher to be disabled. During his deposition, Dr. Baade, Hercules plant physician, stated that he came to the conclusion that the plaintiff was disabled. Deposition of Dr. Baade, at 25, lines 21–24. Further, at the request of the plaintiff, Dr. Baade completed the Attending Physician's Statement of Disability for The Traveler's Insurance Company. On this form, the doctor indicated that the plaintiff was totally disabled and unable to do any work as of that date, July 23, 1976. Affidavit of Wilhelm M. Baade, M.D., and accompanying exhibits filed February 25, 1981. This is not to say that the physician found Mrs. Slusher totally and permanently disabled from entering any employment. Rather, it only indicated the conclusion that she was unable to perform her duties within her occupation at Hercules.

18. Plaintiff's Supplemental Memorandum, at 7.

tiff presented the testimony of a non-treating physician that her hypertension was controllable and that she was not permanently disabled. *Id.* at 990.

Affirming the district court's grant of summary judgment to Chrysler, the Sixth Circuit Court of Appeals rejected plaintiff's contention that Chrysler was required to prove the actual existence of permanent disability. The plaintiff's evidence on the question of whether she was actually disabled did not address the material fact of whether Chrysler "observed the terms" of its plan.

> Under the provisions of the Chrysler pension agreement this contention does not relate to a material issue of fact. The negotiated agreement for early retirement could have contained a provision for certification by physicians with particular qualifications that each candidate is actually permanently disabled. No such provision was included. The agreement permits Chrysler to make this determination and the only condition the court may add is that the determination be made in good faith.

*Id.* at 992. *Accord, Carpenter v. Continental Trailways*, 635 F.2d at 581; *Gonsalves v. Caterpillar Tractor Co.*, 634 F.2d at 1067–69; *Marshall v. Hawaiian Tel. Co.*, 575 F.2d at 766–67.

■ Under the rationale of *Thompson v. Chrysler Corp.*, this court finds that Hercules has observed the terms of its retirement plan. The disability provision in the Employee Benefit Handbook imposes no obligation upon the company to substantiate its disability determination of Mrs. Slusher by a medical opinion, much less "by some objective medical evidence." In fact, the determination of disability of an employee is left solely to Hercules under the terms of its plan. Plaintiff's evidence that she was not disabled, including affidavits from two physicians to this effect, are quite irrelevant to an adjudication of whether the defendant observed the terms of the plan.

This is not to say that an employer's disability determination under a similar provision is never subject to question. As the Thompson court indicates, such a determination must be made by the employer in "good faith". However, this merely requires that the defendant employer make a showing of legitimate facts and circumstances upon which the disability determination is based. The question before this court is not whether the company's methods were sound or whether its termination of Mrs. Slusher was an error in judgment. Rather, the question is whether she was discriminated against because of her age. *See Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir. 1980). Where the employer articulates facts which justify the disability determination, it cannot be said that its decision is not in "good faith".

■ In this respect, the court finds that Hercules made its decision to retire Mrs. Slusher in good faith. The plant physician found that the plaintiff suffered adjustment reactions of older life, difficulty in environmental readjustment, and undesirable personality disorders. He recommended that Hercules commence disability benefits since, in his opinion, she was unable to carry out the duties assigned to her.[19] Additionally, plaintiff had a three-year employment history of deterioration in her performance and attitude.[20] In light of these facts, this court cannot determine that Hercules did not genuinely believe that Mrs. Slusher was disabled, or that Hercules was using these reasons as a pretext for age discrimination.

## VII. CONCLUSION

■ As a final matter, the Court notes that plaintiff has alleged in her complaint that Hercules subjected her to pre-termination harassment and other undesirable conditions of employment. Defendant seeks summary judgment on all the claims asserted against it by the plaintiff under the ADEA, and issued interrogatories to the plaintiff on May 14, 1981 regarding the

---

**19.** Defendant's Exhibit No. 8A, at 3.

**20.** Defendant's Exhibit No. 8.

harassment allegations. On December 10, 1981, the court issued an order directing completion of all discovery by both parties, and has subsequently been assured by plaintiff's counsel by letter that she does not wish to submit any further materials. It coming to the court's attention that plaintiff has failed to answer the interrogatories submitted by the defendant, the Court finds that there is no genuine issue as to any material fact pertinent to this claim. Therefore, it must be dismissed.

FURTHER, in accordance with the foregoing discussion, the Court holds that defendant's Motion for Summary Judgment is timely and properly allowed.

■ FINALLY, the court finds that the defendant Hercules did not retire the plaintiff, Sylvia M. Slusher, in violation of the Age Discrimination in Employment Act since the defendant was observing the terms of a bona fide retirement plan which was not a subterfuge to evade the purposes of the ADEA.

ACCORDINGLY, defendant's motion for summary judgment is hereby granted.

The Clerk of this Court is directed to mail certified copies of this Memorandum Opinion to counsel of record.

Richard Quiggle, John Walker, Little Rock, Ark., for plaintiff.

Walter A. Paulson, Bill S. Clark, Ted Goodloe, Atty., Ark. State Highway Com'n, Little Rock, Ark., for defendant.